RECORD NO. 25-1682

# IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## GOLDEN CORRAL CORP.; GOLDEN CORRAL FRANCHISING SYSTEMS, INC.

*Plaintiffs – Appellants*

v.

## ILLINOIS UNION INSURANCE COMPANY, INC.

*Defendant -- Appellee*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA**

--------------------------------

**OPENING BRIEF OF APPELLANTS**

--------------------------------

Gregg E. McDougal
William R. Hartzell
McDougal Hartzell, PLLC
2626 Glenwood Avenue, Suite 485
Raleigh, North Carolina 27608
919-893-9500

*Counsel for Appellants*

# <u>DISCLOSURE STATEMENTS</u>

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>25-1682</u>     Caption: <u>Golden Corral Corp. et al. v. Illinois Union Insurance Company</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Golden Corral Corp.</u>
(name of party/amicus)

_____

who is <u>an Appellant</u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2. Does party/amicus have any parent corporations?   ☑ YES ☐ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

   Investors Management Corporation

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO
   If yes, identify all such owners:

12/01/2019 SCC         - 1 -

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation?                    ☐YES ☑NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
        If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
        party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
        caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
        corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
        If yes, the United States, absent good cause shown, must list (1) each organizational
        victim of the criminal activity and (2) if an organizational victim is a corporation, the
        parent corporation and any publicly held corporation that owns 10% or more of the stock
        of victim, to the extent that information can be obtained through due diligence.

Signature: _/s/ WM_____        Date: _6/25/25_____

Counsel for: _Golden Corral Corp._____

- 2 -        [Print to PDF for Filing]        [Reset Form]

ii

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _25-1682_    Caption: _Golden Corral Corp. et al. v. Illinois Union Insurance Company_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Golden Corral Franchising Systems, Inc._
(name of party/amicus)

_____

who is _____an Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☑YES ☐NO
      If yes, identify all parent corporations, including all generations of parent corporations:

      Investors Management Corporation

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

12/01/2019 SCC                    - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?                    ☐YES☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                    ☐YES☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?    ☐YES☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: _/s/_____          Date: _6/25/25_____

Counsel for: _Golden Corral Franchising Systems Inc._

Print to PDF for Filing          Reset Form

- 2 -

iv

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

JURISDICTIONAL STATEMENT .....................................................................2

STATEMENT OF THE ISSUES ..........................................................................3

STATEMENT OF THE CASE .............................................................................3

SUMMARY OF ARGUMENT .............................................................................7

ARGUMENT ........................................................................................................8

   I.   STANDARD OF REVIEW .........................................................................8

   II.  THE TRIAL COURT APPLIED ERRONEOUS LEGAL PRINCIPLES IN FINDING THAT GOLDEN CORRAL DID NOT DEMONSTRATE EXTRAORDINARY CIRCUMSTANCES. .....................................................9

     a.   The Trial Court Only Addressed One Prong Of The Test For Rule 60(b)(6) Relief. .........................................................................................9

     b.   Rule 60(b) Is An Exception To Finality In Order To Do Justice. ..............10

     c.   The Trial Court Committed An Error Of Law When It Held That Golden Corral Had Not Articulated Extraordinary Circumstances Under Rule 60(b)(6). .......11

        i.   The Fourth Circuit Does Not Categorically Prohibit Rule 60(b)(6) Relief Due To Changes In Decisional Law. .............................................................11

        ii.   The Trial Court Relied On Cases That Do Not Support Its Position In Denying Golden Corral's Rule 60(b)(6) Motion. ..........................................13

        iii.  The View Among Many Circuit Courts Is That Rule 60(b)(6) Relief Is Appropriate For Changes In Decisional Law In Closely Related Cases. .....18

     d.   The Trial Court Applied The Wrong Test In Holding That Golden Corral Was Not Entitled To Rule 60(B)(6) Relief Due To Its Litigation Choices. ......24

CONCLUSION ...................................................................................................26

REQUEST FOR ORAL ARGUMENT ...............................................................26

CERTIFICATE OF COMPLIANCE ......................**Error! Bookmark not defined.**

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Ackermann v. United States*, 340 U.S. 193 (1950)..............................................24, 25

*Aikens v. Ingram*, 652 F.3d 496 (4th Cir. 2011)......................................................8, 9

*Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d 214 (D. Md. 2020)..............17

*Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743 (5th Cir. 1995)..............16, 18, 20, 22

*Biggins v. Hazen Paper Company*, 111 F.3d 205 (1st Cir. 1997) ...........................15

*Blue Diamond Coal Co. v. Trustees of UMWA Combined Ben. Fund*, 249 F.3d 519
    (6th Cir. 2001).......................................................................................18, 20, 22

*Celestine v. Petroleos De Venezuela SA*, 108 Fed. Appx. 180 (5th Cir. 2004).......20

*Cincinnati Ins. Co. v. Flanders Elec. Motor Service, Inc.*, 131 F.3d 625 (7th Cir.
    1997) .................................................................................................................14

*Cnty. Bd. of Arlington Cnty., Virginia v. Express Scripts Pharmacy, Inc.*, 996 F.3d
    243 (4th Cir. 2021).............................................................................................9

*Coleman v. Jabe*, 633 F. App'x 119 (4th Cir. 2016) .................................................11

*Compton v. Alton S.S. Co., Inc.*, 608 F.2d 96  (4th Cir. 1979)................................10

*DeWeerth v. Baldinger*, 38 F.3d 1266, 1272-73 (2d Cir. 1994)..............................16

*Dowell v. State Farm Fire & Cas. Auto Ins. Co.*, 993 F.2d 46 (4th Cir. 1993) passim

*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) .....................................................8, 19

*Federal Trade Commission v. Ross*, 74 F.4th 186 (4th Cir. 2023) .........................12

*G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.,* 822 F.3d 709 (4th Cir. 2016),
    *vacated and remanded,* 580 U.S. 1168, 137 S. Ct. 1239, 197 L. Ed. 2d 460
    (2017)..................................................................................................................8

*Golden Corral Corp. v. Illinois Union Ins. Co.*, No. 21-2119, 2022 WL 3278938
    (4th Cir. Aug. 11, 2022)......................................................................................6

*Gondeck v. Pan American World Airways, Inc.*, 382 U.S. 25 (1965)....................22

*Gonzalez v. Crosby*, 545 U.S. 524(2005) ...............................................................10

*In re Terrorist Attacks on September 11, 2001*, 741 F.3d 353 (2nd Cir. 2013) .....18,
    20, 21, 22

*Kemp v. United States*, 596 U.S. 528 (2022)...........................................................11

*McGeshick v. Choucair*, 72 F.3d 62 (7th Cir. 1995)........................................passim

*Nisson v. Lundy*, 975 F.2d 802 (11th Cir. 1992) .....................................................10

vi

*North State Deli, LLC v. Cincinnati Ins. Co.*, 386 N.C. 733, 908 S.E.2d 802 (2024). ...................................................................................................1, 6

*O'Brien v. New England Tel. & Tel. Co.*, 422 Mass. 686, 664 N.E.2d 843 (1996) 15

*Patterson v. McLean Credit Union*, 130 F.R.D. 617 (M.D.N.C. 1990)............14, 20

*Pierce v. Cook & Co.*, 518 F.2d 720 (10th Cir. 1975) ......................................passim

*Ritter v. Smith*, 811 F.2d 1398 (11th Cir. 1987)................................................18, 20

*United States v. Kelly*, 917 F. Supp. 2d 553 (W.D.N.C. 2013)................................23

*United States v. Srivastava*, 540 F.3d 277 (4th Cir. 2008)................................9, 17

*Van Skiver v. U.S.*, 952 F.2d 1241  (10th Cir. 1991)..............................................20

**Statutes**

28 U.S.C. § 1291 ........................................................................................................3

28 U.S.C. § 1332(a)....................................................................................................2

**Rules**

Federal Rule of Appellate Procedure 4(a)(1)(A)........................................................3

Federal Rule of Civil Procedure 60(b)(6)..........................................................passim

**INTRODUCTION**

Golden Corral Corp. and Golden Corral Franchising Systems, Inc. (collectively, "Golden Corral") was insured for business interruption losses by Illinois Union Insurance Company ("Illinois Union"). Golden Corral sued Illinois Union in North Carolina state court seeking coverage for business interruption losses caused by government orders issued in response to the COVID-19 pandemic. Illinois Union removed this matter to federal court. The Trial Court, predicting North Carolina law, wrongfully determined that Golden Corral was not entitled to coverage. The Trial Court's ruling was affirmed on appeal.

Simultaneously, a second lawsuit proceeded through the North Carolina state court system, also seeking coverage for business interruption losses caused by government orders issued in response to the COVID-19 pandemic, culminating in the North Carolina Supreme Court finding an insured was entitled to coverage. *North State Deli, LLC v. Cincinnati Ins. Co.*, 386 N.C. 733, 908 S.E.2d 802 (2024).

Notably, as admitted by Illinois Union, the insurance policy at issue here and the insurance policy in *North State Deli* contain "materially identical" policy language. JA556. This case and *North State Deli* arise out of the same facts. Both cases deal with "materially identical" policy provisions, JA556, that both depend on whether the insured has suffered "direct physical loss" for coverage. These provisions both require the application of the same North Carolina law. Both cases

1

deal with loss of use of property due to executive orders issued in response to the COVID-19 pandemic.  Both cases seek the same type of damages for the same type of harm that occurred at the same time.  Thus, two closely related cases, proceeding simultaneously in state and federal court, achieved different results.

Federal Rule of Civil Procedure 60(b)(6) exists to reopen judgments to achieve justice.  While a mere change in decisional law does not warrant Rule 60(b)(6) relief, Rule 60(b)(6) relief is warranted when divergent results are reached in closely related cases proceeding simultaneously in state and federal courts.  Accordingly, Golden Corral moved the Trial Court, under Rule 60(b)(6) , to reopen the judgment.  The Trial Court misapplied the law, and thus abused its discretion, when it held that Golden Corral was categorically prohibited from receiving Rule 60(b)(6) relief.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction under 28 U.S.C. § 1332(a) because Golden Corral Corporation, Inc. and Golden Corral Franchising Systems, Inc. are both North Carolina corporations with their principal place of business in North Carolina, Illinois Union Insurance Company is an Illinois corporation with its principal office located in Pennsylvania, and the amount in controversy exceeds $75,000.  JA077.

2

The trial court entered final judgment denying Golden Corral's Rule 60(b)(6) motion on May 14, 2025. JA660-665. Golden Corral filed its notice of appeal, timely under Federal Rule of Appellate Procedure 4(a)(1)(A), on June 11, 2025. JA667. This Court has jurisdiction over this appeal because it is from a final judgment. 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.     Whether the Trial Court misapplied the law, and therefore abused its discretion, in denying Golden Corral's Rule 60(b)(6) motion?

## STATEMENT OF THE CASE

Golden Corral and its franchisees operate numerous buffet restaurants. JA044. On or about March 31, 2019, Illinois Union issued Golden Corral an "all-risks" insurance policy, number D4226555A 001 (the "Policy"), which provides coverage for business interruption and for the losses to gross revenues, royalties, rental income, and extra expenses related thereto with a maximum Limit of Liability of Fifty Million Dollars and 00/100 ($50,000,000.00). JA045-046.

The Policy includes the following applicable provisions:

## II.    INSURING AGREEMENT

> … [T]he Insurer … does insure the interest of the Insured named in the Declarations and its legal representatives, to the extent more fully described in this Policy, against 'all risks' of direct physical loss, damage or destruction, occurring during the Policy

3

period, except hereinafter excluded, of the property described
and insured in this Policy.

\* \* \*

V.    **TIME ELEMENT**

    1.    **BUSINESS INTERRUPTION**

        1.    This Policy insures loss resulting from the
necessary interruption or reduction of business
operations conducted by the Insured and caused by
physical loss, damage or destruction, by a peril
insured by this Policy, of property insured.

JA131, JA141.

On May 14, 2020, Golden Corral filed suit in North Carolina state court

seeking a declaration that these coverages applied to losses it suffered when Golden

Corral's business operations were lost due to the COVID-19 viral pandemic and by

civil authorities' measures to limit the pandemic's spread.  JA023.  Illinois Union

then removed the action to federal court.  JA007.  On August 28, 2020, after Illinois

Union denied coverage for Golden Corral's claims, Golden Corral filed an Amended

Complaint adding additional causes of action for breach of contract and breach of

the implied covenant of good faith and fair dealing.  JA042.  Illinois Union answered

the Amended Complaint and then filed a Motion for Judgment on the Pleadings.

JA207.

The Trial Court granted Illinois Union's Motion for Judgment on the

Pleadings.  JA505-JA527.  In granting the motion, the Trial Court concluded that

"the policy provisions are confined to tangible, physical harms and losses." JA517. In reaching this conclusion, the Trial Court analyzed the plain meaning of various terms and determined that "the phrases 'direct physical loss, damage or destruction' and 'physical loss, damage or destruction' require tangible, physical harm or destruction to covered property or tangibly losing covered property as a result of a peril insured." JA514-JA515. The Trial Court further relied upon the Policy's "Period of Recovery" provision and reasoned that the provision "presupposes a direct, tangible alteration to property requiring repair or replacement before the property is useable again." JA516. The Trial Court further reasoned that this provision "comports with a reading of the … 'Business Interruption' clause[] that requires a showing of tangible, physical loss, damage, or destruction." JA516. Thus, the Trial Court held that Golden Corral failed to allege the needed tangible, physical harms and losses needed to trigger the Business Interruption provision. JA517.

On October 6, 2021, Golden Corral appealed to the Fourth Circuit. JA529. During the appeal, Illinois Union submitted a Federal Rule of Appellate Procedure 28(j) letter, in which Illinois Union sought "to bring to the panel's attention four recent decisions that directly address the issues pending" on appeal. JA556. Illinois Union specifically brought the panel's attention to the *North State Deli et al.* North Carolina Court of Appeals decision:

> In ***North State Deli et al. v. Cincinnati Insurance Company***, -- S.E.2d--, 2022 WL 2432157 (N.C. Ct. App. 2022), the North Carolina Court

> of Appeals reversed a trial court determination cited by Appellants. The Court held that policy language materially identical to that at issue here did not provide "coverage for business interruption losses due to COVID-19 governmental orders because there is no direct physical loss or damage to the insured property." *Id.* at *2. Allegations of "a general 'loss of use'" did not suffice. *Id.*

JA556. Most notably, Illinois Union admitted that the policy language in *North State Deli* is "materially identical to that at issue here." JA556. The Fourth Circuit entered a per curiam opinion affirming. *Golden Corral Corp. v. Illinois Union Ins. Co.*, No. 21-2119, 2022 WL 3278938, at *1 (4th Cir. Aug. 11, 2022). Golden Corral sought en banc review, which was denied.

On December 13, 2024, the North Carolina Supreme Court unanimously decided that a restaurant has alleged "direct physical loss" for purposes of an insurance policy when they alleged loss of use. *North State Deli, LLC v. Cincinnati Ins. Co.*, 386 N.C. 733, 743, 908 S.E.2d 802, 810 (2024). Specifically, the North Carolina Supreme Court held that "[p]roperty 'loss' surely occurs when it is no longer usable for its insured purpose, as a policyholder would reasonably expect. Thus[,] when the restaurants lost physical use of their properties as restaurants due to the pandemic orders, they experienced a direct physical loss." *Id.* The mandate for *North State Deli* was issued on January 2, 2025. *See* N.C. R. App. P. 32. The closely related case of *North State Deli*, with the same facts as here, was originally filed on May 18, 2020, only four days after this case was filed.

6

On January 31, 2025, Golden Corral moved for Rule 60(b)(6) relief, arguing that Golden Corral was entitled to Rule 60(b)(6) relief because (1) its motion was timely, (2) Golden Corral possessed a meritorious defense to Illinois Union's Motion for Judgment on the Pleadings due to the holding in *North State Deli*, (3) Illinois Union will not suffer any unfair prejudice, and (4), relevant here, extraordinary circumstances exist because divergent results were reached in this matter and *North State Deli*, two closely related cases with one proceeding in state court and one proceeding in federal court.  JA533-JA554.

On May 14, 2025, the Trial Court denied Golden Corral's Rule 60(b)(6) motion.  JA660.  In denying Golden Corral's Rule 60(b)(6) motion, the Trial Court "assume[d] without deciding" that Golden Corral had satisfied certain threshold requirements and denied the motion because Golden Corral failed to demonstrate extraordinary circumstances sufficient to warrant Rule 60(b)(6) relief.  JA664-665.  On June 11, 2025, Golden Corral filed its notice of appeal.  JA667-JA668.

## SUMMARY OF ARGUMENT

First, the Trial Court incorrectly held that the Fourth Circuit categorically prohibits Rule 60(b)(6) relief due to any and all changes in decisional law, undermining Golden Corral's argument of extraordinary circumstances.  In reaching its position, the Trial Court relied on cases that directly contradict its position.

Second, the Trial Court failed to follow the prevailing conclusion that Rule 60(b)(6) relief is warranted when changes in decisional law result in conflicting judgments between two closely related cases arising out of the same facts, with one proceeding in state court and the other proceeding in federal court. This divergent outcome between state and federal courts violates a core tenet of *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938): in diversity actions, results in federal court should be substantially the same as those in state court litigation arising out of the same set of facts, creating extraordinary circumstances.

Accordingly, this Court should reverse the Trial Court's order denying Rule 60(b)(6) relief and remand further consideration of the threshold elements of (1) timeliness, (2) a meritorious defense, (3) lack of unfair prejudice to the opposing party under Rule 60(b)(6), which the Trial Court did not reach.

## ARGUMENT

### I. STANDARD OF REVIEW

A trial court's ruling on a Rule 60(b) motion is reviewed for abuse of discretion. *E.g. Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011). "A district court has abused its discretion if its decision is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." *G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.,* 822 F.3d 709, 724 (4th Cir. 2016), *vacated and remanded,* 580 U.S. 1168, 137 S. Ct. 1239, 197 L. Ed. 2d 460 (2017) (quoting *Morris v. Wachovia Sec.,*

*Inc.*, 448 F.3d 268, 277 (4th Cir. 2006)).  In other words, "a district court necessarily abuses its discretion when it makes an error of law."  *United States v. Srivastava*, 540 F.3d 277, 287 (4th Cir. 2008).

## II.    THE TRIAL COURT APPLIED ERRONEOUS LEGAL PRINCIPLES IN FINDING THAT GOLDEN CORRAL DID NOT DEMONSTRATE EXTRAORDINARY CIRCUMSTANCES.

### a.    The Trial Court Only Addressed One Prong Of The Test For Rule 60(b)(6) Relief.

Pursuant to Rule 60(b)(6), "[o]n motion and just terms, the court may relieve a party … from a final judgment, order, or proceeding for the following reasons: … (6) any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  To be entitled to Rule 60(b) relief, a movant must demonstrate (1) timeliness, (2) a meritorious defense, (3) lack of unfair prejudice to the opposing party, and (4) entitlement to relief under one of the six categories listed in Rule 60(b).  *Dowell v. State Farm Fire & Cas. Auto Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993).  A court will grant Rule 60(b)(6) motions when the movant establishes "extraordinary circumstances."  *Aikens v. Ingram*, 652 F.3d 496, 500 (4th Cir. 2011).

The Trial Court "assume[d] without deciding" that Golden Corral satisfied the threshold requirements of timeliness, a meritorious defense, and lack of unfair prejudice.  JA663.  "Generally, federal appellate courts should not consider issues that were not first addressed by the district court."  *Cnty. Bd. of Arlington Cnty., Virginia v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 254 (4th Cir. 2021) (citing

*Bakker v. Grutman*, 942 F.2d 236, 242 (4th Cir. 1991)).  Accordingly, Golden Corral limits its arguments here to the fourth prong, the issue of whether the Trial Court erred in finding that Golden Corral had not articulated entitlement to relief under Rule 60(b)(6).

        b.    <u>Rule 60(b) Is An Exception To Finality In Order To Do Justice.</u>

Rule 60(b)'s "whole purpose is to make an exception to finality." *Gonzalez v. Crosby*, 545 U.S. 524, 529 (2005).  Accordingly, the United States Supreme Court has "give[n] little weight to … appeal[s] to the virtues of finality.  That policy consideration, standing alone, is unpersuasive in the interpretation of a provision whose whole purpose is to make an exception to finality." *Id.* at 529.  Rule 60(b)(6) "has been described as the 'catch-all' clause because it provides the court with 'a grand reservoir of equitable power to do justice in a particular case' and 'vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice' where relief might not be available under any other clause in 60(b)." *Compton v. Alton S.S. Co., Inc.*, 608 F.2d 96, 106-07 (4th Cir. 1979) (citations omitted).  Rule 60(b) is to be given "liberal and remedial construction." *Nisson v. Lundy*, 975 F.2d 802, 807 (11th Cir. 1992).  Accordingly, Rule 60(b) "should be liberally construed when substantial justice will be thus served." *Pierce v. Cook & Co.*, 518 F.2d 720, 722 (10th Cir. 1975) (quoting *Radack v. Norwegian American Line Agency, Inc.*, 318 F.2d 538, 542 (2nd Cir. 1963)), cert.

denied, 96 S. Ct. 866 (1976). Thus, a court may grant Rule 60(b)(6) relief if "such action is appropriate to accomplish justice." *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993) (quoting *Klapprott v. United States*, 335 U.S. 601, 615 (1949)).

    c.    <u>The Trial Court Committed An Error Of Law When It Held That Golden Corral Had Not Articulated Extraordinary Circumstances Under Rule 60(b)(6).</u>

        i.    *The Fourth Circuit Does Not Categorically Prohibit Rule 60(b)(6) Relief Due To Changes In Decisional Law.*

The Fourth Circuit has repeatedly emphasized that a change in decisional law *generally* does not constitute extraordinary circumstances and, therefore, generally does not justify relief under Rule 60(b)(6). *Coleman v. Jabe*, 633 F. App'x 119, 120 (4th Cir. 2016) (noting change in decisional law "rarely" justifies Rule 60(b)(6) relief); *Dowell v. State Farm Fire and Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993) (noting that a "mere[]" change in decisional law is insufficient to justify Rule 60(b)(6) relief. Recognizing that there are rare circumstances when a change in decisional law can constitute extraordinary circumstances and, therefore, justify Rule60(b)(6) relief, Justice Sotomayor has noted that United States Supreme Court "settled precedent[]" permits a judge to reopen a case under Rule 60(b)(6) due to a "change in controlling law." *Kemp v. United States*, 596 U.S. 528, 540 (2022) (Justice Sotomayor, concurring). By contrast, the Trial Court stated that a change in

decisional law never provides a basis for relief under Rule 60(b)(6).  JA661.  However, the Fourth Circuit does not have a categorical prohibition against granting Rule 60(b)(6) relief for a change in decisional law.  Thus, while rare, certain instances of change in decisional law constitute extraordinary circumstances and, therefore, warrant Rule 60(b)(6) relief.

To help understand what limited instances of changes in decisional law constitute extraordinary circumstances and, therefore, warrant Rule 60(b)(6) relief, the Fourth Circuit recently articulated why it is generally hostile to granting Rule 60(b)(6) relief for a change in decisional law: "A conclusion that [a change in law] justifies vacatur would effectively eviscerate finality interests and open the floodgates to newly meritorious 60(b)(6) motions each time the law changes." *Federal Trade Commission v. Ross*, 74 F.4th 186, 194 (4th Cir. 2023).  Thus, the Fourth Circuit generally prohibits Rule 60(b)(6) relief based on a change in decisional law because the Fourth Circuit is concerned that such a holding would effectively reopen every case decided under the previous law.  But, that concern does not apply here.  Golden Corral's Rule 60(b)(6) motion is seeking relief due to a legal interpretation of specific language in a property insurance policy that is triggered by the same facts, shared by the parties here and in *North State Deli.*  Both cases were filed in May of 2020, just four days apart.  Both cases deal with "materially identical" policy provisions, JA556, that both depend on whether the insured has suffered

12

"direct physical loss" for coverage. These provisions both require the application of the same North Carolina law. Both cases deal with loss of use of property due to executive orders issued in response to the COVID-19 pandemic. Both cases seek the same type of damages for the same type of harm that occurred at the same time. The Fourth Circuit does not prohibit Rule 60(b)(6) relief in this instance.

Here, the Trial Court held that a change in decisional law never provides a basis for relief under Rule 60(b)(6). JA661. This is a mischaracterization of Fourth Circuit precedent. While the Fourth Circuit generally prohibits such motions, it does not categorically bar them. Thus, the Trial Court misapplied the law when it held that the Fourth Circuit does not ever permit Rule 60(b)(6) relief for a change in decisional law. The Trial Court, therefore, abused its discretion.

ii.     *The Trial Court Relied On Cases That Do Not Support Its Position In Denying Golden Corral's Rule 60(b)(6) Motion.*

The Trial Court rejected the approach in *Pierce* and incorrectly claims that the "prevailing conclusion" reached by circuit courts is to reject requests for Rule 60(b)(6) relief to remedy divergent results reached in closely related cases. JA664. In support of this "prevailing conclusion," the Trial Court cites to six different circuit court cases, JA664, none of which support the trial court's contention. Each of these cases are addressed below.

Contrary to the Trial Court's decision, *McGeshick v. Choucair*, 72 F.3d 62, 65 (7th Cir. 1995), directly supports Golden Corral's position that Rule 60(b)(6)

relief is warranted when state-law cases arising out of a similar occurrence proceeding simultaneously in state and federal court reach divergent results. Specifically, the Seventh Circuit held that the approach taken by the Tenth Circuit in *Pierce v. Cook & Co.*, 518 F.2d 720 (10th Cir. 1975), the seminal case granting Rule 60(b)(6) relief to rectify divergent results reached in state and federal courts in closely related cases, is consistent with the general approach taken by the Fourth Circuit. *Id.* Furthermore, while the *McGeshick* court refused to grant Rule 60(b)(6) relief, it only did so because the change in decisional law "occurred in a case entirely unrelated to the case before [them]." *Id.*; *see also Patterson v. McLean Credit Union*, 130 F.R.D. 617, 618 (M.D.N.C. 1990).

In *Cincinnati Ins. Co. v. Flanders Elec. Motor Service, Inc.*, 131 F.3d 625, 629 (7th Cir. 1997), the Seventh Circuit specifically noted that a change in state decisional law does not warrant Rule 60(b)(6) relief when that change in decisional law comes in an unrelated case. Specifically, the Seventh Circuit stated "[t]here is nothing in *Erie* that suggests that consistency must be achieved at the expense of finality, or that federal cases finally disposed of must be revisited anytime an *unrelated* state case clarifies the applicable rules of law." *Id.* (emphasis added) (quoting *DeWeerth v. Baldinger*, 38 F.3d 1266, 1272-73 (2d Cir. 1994)). Thus, the Seventh Circuit allows Rule 60(b)(6) relief when a change in decisional law comes in a closely related case.

14

In *Biggins v. Hazen Paper Company*, 111 F.3d 205, 212 (1st Cir. 1997), the First Circuit reasoned that Rule 60(b) relief was not appropriate for a plaintiff when there was a "gradual extension" of state law precedent. Specifically, the First Circuit noted that the development of state common law in *O'Brien v. New England Tel. & Tel. Co.*, 422 Mass. 686, 664 N.E.2d 843 (1996), did not entitle the Appellant to Rule 60(b)(6) relief. *Id.* In *O'Brien*, the Massachusetts Supreme Court held that the employee manual at issue granted an at-will rights beyond the limited common-law rights granted to at-will employees. *O'Brien*, 422 Mass. at 694, 665 N.E.2d at 849. While *Biggins* also addresses a similar legal issue, *Biggins* and *O'Brien* are unrelated. These two cases do not arise out of the same injury-causing event, do not involve the same or materially same employee handbook language, and arose from incidents roughly three years apart.[1] Because of the apparent distinctions between *Biggins* and *O'Brien*, the First Circuit noted that "common law could not safely develop if the latest evolution in the doctrine became the standard for measuring previously resolved claims." *Id.* Thus, *Biggins* does not address a situation where closely related cases proceeding in state and federal court reach divergent results, but rather addresses the problem faced when every development in common law is

---

[1] In *Biggins*, the employee was terminated in June of 1986. *Biggins v. Hazen Paper Co.*, 953 F.2d 1405, 1407 (1st Cir. 1992). In *O'Brien*, the employee was terminated "[t]oward the end of 1989." *See O'Brien*, 664 N.E.2d at 689, 664 N.E.2d at 846.

retroactively applied to all resolved cases.  Thus, *Biggins* does not support the Trial Court's position.

In *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 746 (5th Cir. 1995), the Fifth Circuit specifically notes that the change in law which is the basis for the Rule 60(b)(6) motion came in "an unrelated … case."  By contrast, the Fifth Circuit reasoned that a change in decisional law may constitute a "special circumstance warranting relief" and specifically stated "where two cases arising out of the same transaction resulting in conflicting judgments, relief has been found to be warranted." *Batts*, 66 F.3d at 748 n. 6 (citing *Pierce v. Cook & Co.*, 518 F.2d 720, 723 (10th Cir. 1975)).

In *DeWeerth v. Baldinger*, 38 F.3d 1266, 1272-73 (2d Cir. 1994), the Second Circuit similarly based its holding that a change in state decisional law does not justify Rule 60(b)(6) relief on the fact that the change in state decisional law came in an unrelated case.  Therefore, if the change in state decisional law came in a closely related case, Rule 60(b)(6) relief is warranted.

In *Dowell v. State Farm Fire and Cas. Auto. Ins. Co.*, 993 F.2d 46 (4th Cir. 1993), the Fourth Circuit held that a "mere" change in decisional law is insufficient to warrant Rule 60(b)(6) relief.  By implication, something more than a "mere" change in decisional law would be sufficient to warrant Rule 60(b)(6) relief. *Id.*

Most importantly, the court refused to grant Rule 60(b)(6) relief because the movant failed to appeal the underlying order. *Id.*

In sum, all cases cited by the Trial Court do not support the Trial Court's position that Golden Corral is not entitled to Rule 60(b)(6) relief due to a change in decisional law in closely related cases. All cases cited by the Trial Court support Golden Corral's position that changes in decisional law in closely related cases are treated differently than changes in decisional law in unrelated cases. The Trial Court made an error of law (and, therefore, abused its discretion) by relying on non-supportive cases. *United States v. Srivastava*, 540 F.3d 277, 287 (4th Cir. 2008) ("[A] district court necessarily abuses its discretion when it makes an error of law.").

In any further attempt to diminish the significance of Golden Corral's motion, the Trial Court attempts to distinguish Golden Corral's Rule 60(b)(6) motion from precedent granting Rule 60(b)(6) motions by stating that Golden Corral's case is a "mine-run insurance coverage dispute." JA664. First, this insurance dispute arises out of the rare and devastating COVID-19 pandemic. *See e.g. Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d 214, 223 (D. Md. 2020) ("The world is now in the grip of a public health crisis more severe than any seen for a hundred years."). Second, even if the COVID-19 pandemic were not a once-in-a-generation event, there is no requirement that Rule 60(b)(6) motions arise out of a hyper-rare global context. *See e.g. Pierce v. Cook & Co., Inc.* 518 F.2d 720, 723 (10th Cir. 1975)

17

(granting a Rule 60(b)(6) motion arising out of a simple car crash).  To reject Golden Corral's Rule 60(b)(6) motion because it is a "mine-run" case is an error of fact and law and, therefore, an abuse of discretion.

As discussed below, many circuit courts that have addressed the issue have concluded that Rule 60(b)(6) relief is appropriate when divergent results are reached in closely related cases.  *See e.g. Pierce v. Cook & Co., Inc.* 518 F.2d 720 (10th Cir. 1975); *Ritter v. Smith*, 811 F.2d 1398, 1403 (11th Cir. 1987); *McGeshick v. Choucair*, 72 F.3d 62 (7th Cir. 1995); *In re Terrorist Attacks on September 11, 2001*, 741 F.3d 353, 358 (2nd Cir. 2013); *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743 (5th Cir. 1995); *Blue Diamond Coal Co. v. Trustees of UMWA Combined Ben. Fund*, 249 F.3d 519 (6th Cir. 2001).

> iii.     *The View Among Many Circuit Courts Is That Rule 60(b)(6) Relief Is Appropriate For Changes In Decisional Law In Closely Related Cases.*

The Trial Court incorrectly rejected *Pierce v. Cook & Co., Inc.*, 518 F.2d 720 (10th Cir. 1975) and incorrectly stated that the "prevailing conclusion" of circuit courts is at odds with *Pierce.*  JA664.  In *Pierce v. Cook & Co., Inc.*, the Tenth Circuit analyzed whether a trial court properly denied a Rule 60(b) motion when different plaintiffs both injured in the same vehicular accident achieved different outcomes in state and federal court.  518 F.2d at 721.  There, a car collided with a tractor trailer. *Id.*  The driver of the car was killed, and his passengers were injured.  *Id.*  Survivors

18

of the driver filed suit in state court. *Id.* While the passengers also filed suit in state court, their case was removed due to diversity jurisdiction. *Id.* The passengers' suit was ultimately dismissed by a federal court, while the suit filed by the driver's survivors in state court was ultimately successful in the Oklahoma Supreme Court. *Id.* Thereafter, the passengers sought Rule 60(b)(6) relief, which the trial court denied. The passengers appealed. On appeal, the Tenth Circuit reasoned that the passengers were forced into federal court by the defendant's removal. The court further reasoned that "[w]e are concerned with an action in which federal jurisdiction depends on diversity. In diversity jurisdiction cases[,] the results in federal court should be substantially the same as those in state court litigation arising out of the same transaction or occurrence." *Id.* at 723 (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 74-75 (1938)). The Tenth Circuit further held:

> The unusual combination of events which have occurred make the situation extraordinary. The federal courts in which plaintiffs were forced to litigate have given them substantially different treatment than that received in state court by another injured in the same accident. The outcome determination principle mandated by Erie v. Tompkins has been violated.

*Id.* Thus, under *Pierce*, when divergent results are reached in closely related cases proceeding in state and federal court, extraordinary circumstances exist under Rule 60(b)(6).

Many circuit courts have positively cited, referenced, or applied the logic of *Pierce. See e.g. Ritter v. Smith*, 811 F.2d 1398, 1403 (11th Cir. 1987); *McGeshick v. Choucair*, 72 F.3d 62 (7th Cir. 1995); *In re Terrorist Attacks on September 11, 2001*, 741 F.3d 353, 358 (2nd Cir. 2013); *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743 (5th Cir. 1995); *Blue Diamond Coal Co. v. Trustees of UMWA Combined Ben. Fund*, 249 F.3d 519 (6th Cir. 2001); *Celestine v. Petroleos De Venezuela SA*, 108 Fed. Appx. 180 (5th Cir. 2004) ("Where two cases arise out of the same transaction result in conflicting judgments, relief is warranted."); *Van Skiver v. U.S.*, 952 F.2d 1241, 1245 (10th Cir. 1991) (noting that a "post-judgment change in the law" that arises in a "related case" is sufficient for Rule 60(b)(6) relief. In addition, at least one district court within the Fourth Circuit has cited *Pierce v. Cook & Co.*, 518 F.2d 720 (10th Cir. 1975) as an example of a scenario where Rule 60(b)(6) relief is appropriate due to a change in decisional law in a closely related case. *Patterson v. McLean Credit Union*, 130 F.R.D. 617, 618 (M.D.N.C. 1990).

For example, in *Ritter*, the Eleventh Circuit noted that "[b]ecause of [a] close connection between … two cases, [a] court found the circumstances sufficiently extraordinary to justify disturbing the finality of a judgment. 811 F.2d at 1402. The Eleventh Circuit further noted that "extraordinary circumstances necessary for Rule 60(b) relief" are present when a change in decisional law comes in a "closely related" case. *Id.* at 1403. Thus, the Eleventh Circuit grants Rule 60(b)(6) relief when, as

20

here, an intervening change in decisional law comes in a closely related case, causing divergent results in state and federal courts.

For example, in *McGeshick*, as noted above, the Seventh Circuit held that the approach taken by the Tenth Circuit in *Pierce v. Cook & Co.*, 518 F.2d 720 (10th Cir. 1975), the seminal case granting Rule 60(b)(6) relief to rectify divergent results reached in state and federal courts in closely related cases, is consistent with the general approach taken by the Fourth Circuit. *McGeshick v. Choucair*, 72 F.3d 62, 65 (7th Cir. 1995). Furthermore, while the *McGeshick* court refused to grant Rule 60(b)(6) relief, it only did so because the change in decisional law "occurred in a case entirely unrelated to the case before [them]." *Id.* Accordingly, the Seventh Circuit is willing to grant Rule 60(b)(6) relief when a change in decisional law occurs in a closely related case, as is the case here.

For example, in *In re Terrorist Attacks on Sept. 11, 2001*, the Second Circuit Court of Appeals was tasked with analyzing whether Rule 60(b)(6) relief was appropriate when two separate cases arising out of the September 11th terrorist attacks resulted in "inconsistent results between two sets of plaintiffs suing for damages based on the same incident." *In re Terrorist Attacks on Sept. 11, 2001*, 741 F.3d 353, 357 (2d Cir. 2013) ("[T]he plaintiffs 'are persons who incurred losses in the September 11, 2001 terrorist attacks: those who suffered personal injuries, the families and 13 representatives of those who died, insurers, and property owners.'").

The Second Circuit reasoned that interests in finality of judgments are outweighed by serving the ends of justice when different plaintiffs who are victims of a related incident are treated differently by the courts. *Id.* (citing *Gondeck v. Pan American World Airways, Inc.*, 382 U.S. 25, 26-27 (1965)). "[I]nconsistent results for victims of the same incident poses a unique problem of unfairness." *Id.* at 359.

For example, in *Batts*, as noted above, the Fifth Circuit reasons that the change in law which is the basis for the Rule 60(b)(6) motion came in "an unrelated … case." *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 746 (5th Cir. 1995). By contrast, the Fifth Circuit reasoned that a change in decisional law may constitute a "special circumstance warranting relief" and specifically stated "where two cases arising out of the same transaction resulting in conflicting judgments, relief has been found to be warranted." *Batts*, 66 F.3d at 748 n. 6 (citing *Pierce v. Cook & Co.*, 518 F.2d 720, 723 (10th Cir. 1975)).

For example, in *Blue Diamond Coal Co.*, the Sixth Circuit noted that Rule 60(b)(6) relief is appropriate to "resolve divergent judgments in the 'same transaction." *Blue Diamond Coal Co. v. Trs. of UMWA Combined Ben. Fund*, 249 F.3d 519, 525 (6th Cir. 2001). The court noted that this rationale gains strength when the outcome-determinative test of *Erie* is violated. *See id.* (holding that *Pierce* is distinguishable from the case before it because case before it did not "deal with divergent results stemming from a choice of a federal rather than state forum").

22

Here, like that in *Pierce*, the command of *Erie* has been violated. Cases arising out of the same transaction or occurrence (closely related) have achieved different results based on whether defendants were able to remove cases to federal court. This case and *North State Deli* arise out of the same transaction and occurrence. Both cases were filed in May of 2020, just four days apart. Both cases deal with "materially identical" policy provisions, JA556, that both depend on whether the insured has suffered "direct physical loss" for coverage. These provisions both require the application of the same North Carolina law. Both cases deal with loss of use of property due to executive orders issued in response to the COVID-19 pandemic. Both cases seek the same type of damages for the same type of harm that occurred at the very same time. This substantial similarity between this matter and *North State Deli* create extraordinary circumstances under Rule 60(b)(6).

*North State Deli* proceeded in state court, with the North Carolina Supreme Court ultimately finding coverage. Despite filing its action in state court merely four days after the *North State Deli* lawsuit was originally filed, Golden Corral's lawsuit was removed to federal court by Illinois Union and resulted in a finding of no coverage. Unlike all other states, North Carolina lacks a certified question procedure. *United States v. Kelly*, 917 F. Supp. 2d 553, 560 (W.D.N.C. 2013). Accordingly, by removing the case to federal court, Illinois Union deprived the North Carolina state court system of any opportunity to review this dispute between

Golden Corral and Illinois Union. By removing this case to federal court, Illinois Union caused this action to achieve different results than similar cases proceeding in state court. Thus, closely related cases arising out of the same transaction or occurrence are achieving different results in state and federal courts. This violates the command of *Erie*. Accordingly, extraordinary circumstances exist that warrant relief under Rule 60(b)(6), and the Trial Court committed an error of law, and therefore an abuse of discretion, in denying Golden Corral's Rule 60(b)(6) motion.

      d.    <u>The Trial Court Applied The Wrong Test In Holding That Golden Corral Was Not Entitled To Rule 60(B)(6) Relief Due To Its Litigation Choices.</u>

The Trial Court held that Golden Corral should not be entitled to Rule 60(b)(6) relief because Golden Corral made the decision to be a "first-mover in North Carolina COVID-19 insurance litigation" and did not seek a stay of the action pending the result in *North State Deli*. JA664. That is not the test and is not supported by any case law. Rather, in the Fourth Circuit, courts only decline to grant Rule 60(b)(6) relief due to a movant's litigation choices when the movant made the conscious decision to not appeal.

The United States Supreme Court held that a party is not entitled to Rule 60(b)(6) relief when they make a "voluntary, deliberate, free, untrammeled choice … not to appeal." *Ackermann v. United States*, 340 U.S. 193, 200 (1950). This holding has been echoed by the Fourth Circuit, barring parties from seeking Rule

60(b)(6) relief when they choose not to appeal. *Dowell v. State Farm Fire and Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993) ("As did Ackermann, Dowell made a 'voluntary, deliberate, free, and untrammeled choice,' 340 U.S. at 200, 71 S. Ct. at 212, not to appeal the decision of the district court granting State Farm's motion for summary judgment."). The "voluntary, deliberate, free, [and] untrammeled choice" not to appeal an adverse ruling bars Rule 60(b)(6) relief. *Ackermann*, 340 U.S. at 200; *Dowell*, 993 F.2d at 48.

Here, the Trial Court held that "Golden Corral made a 'voluntary, deliberate, free, and untrammeled choice' to be a first mover in COVID-19 insurance litigation." JA664 (quoting *Dowell*, 993 F.2d at 48). However, this is not what *Dowell* states. *Dowell* specifically addressed a movant's failure to appeal: "Dowell made a 'voluntary, deliberate, free, and untrammeled choice,' not to appeal the decision …" *Dowell*, 993 F.2d at 46. Thus, the Trial Court improperly interpreted *Dowell*. Golden Corral appealed the adverse ruling from which it now seeks Rule 60(b)(6) relief. JA529. Accordingly, Golden Corral did not make a "voluntary, deliberate, free, and untrammeled choice not to appeal" the judgment from which it now seeks Rule 60(b)(6) relief.

Furthermore, Golden Corral's decision to move quickly in its COVID-19 litigation was the only reasonable litigation tactic at the time. In this lawsuit, Golden Corral sought lost business income it suffered when its restaurants were closed due

25

to government orders promulgated in response to the COVID-19 pandemic. JA050. Despite being entitled to coverage (as ultimately shown in the *North State Deli* matter), Illinois Union refused to honor its contractual obligations and pay Golden Corral's claim. Golden Corral was fighting for its life and quickly needed the money it was correctly owed by Illinois Union. Delaying this lawsuit would only cause more harm to Golden Corral.

Thus, the Trial Court made an error of law (and, therefore, abused its discretion) when it stated that Golden Corral had not articulated extraordinary circumstances and, therefore, was not entitled to Rule 60(b)(6) relief when it made the decision to file its case quickly and to not seek a stay pending the decision in *North State Deli*. *United States v. Srivastava*, 540 F.3d 277, 287 (4th Cir. 2008) ("[A] district court necessarily abuses its discretion when it makes an error of law.").

## CONCLUSION

For the foregoing reasons, this Court should reverse the Trial Court's order denying Rule 60(b)(6) relief and remand further consideration of the threshold elements of (1) timeliness, (2) a meritorious defense, (3) lack of unfair prejudice to the opposing party under Rule 60(b)(6), which the Trial Court did not reach.

## REQUEST FOR ORAL ARGUMENT

Golden Corral respectfully requests oral argument. This appeal presents an issue that is of interest to the public and is jurisprudentially significant.

Respectfully submitted,

/s/ Gregg E. McDougal
Gregg E. McDougal
William R. Hartzell
MCDOUGAL HARTZELL, PLLC
2626 Glenwood Ave, Suite 485
Raleigh, North Carolina 27608
(919) 893-9504

*Counsel for Appellants*

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. 25-1682      Caption: Golden Corral Corp. et al. v. Illinois Union Ins. Co.

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2) & 40(d)(3).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6). Sans-serif type, such as Arial, may not be used except in captions and headings.

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

☑ this brief or other document contains ___7016___ [*state number of*] words

☐ this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

☑ this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word [*identify word processing program*] in
Times New Roman, 14-point font [*identify font, size, and type style*];

**or**

☐ this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font, size, and type style*].

**NOTE: The Court's preferred typefaces are Times New Roman, Century Schoolbook, and Georgia. The Court discourages the use of Garamond.**

(s) _____

Party Name _Golden Corral Corp_      Date: _8/4/25_
_Golden Corral Franchising_
_Systems Inc._

12/09/2024 NA/MEO

28