No. 25-1682

---

GOLDEN CORRAL CORP.; GOLDEN CORRAL FRANCHISING SYSTEMS, INC.,
*Plaintiffs-Appellants*,

v.

ILLINOIS UNION INSURANCE COMPANY,
*Defendant-Appellee.*

On Appeal From The United States District Court
For The Eastern District of North Carolina
The Honorable James C. Dever III
Case No. 5:20-cv-00349-D

**BRIEF OF APPELLEE**

| | |
|---|---|
| THEODORE B. SMYTH | JONATHAN D. HACKER |
| STEVEN A. BADER | JENYA GODINA |
| CRANFILL SUMNER LLP | O'MELVENY & MYERS LLP |
| PO Box 27808 | 1625 Eye St. N.W. |
| Raleigh, N.C. 27611 | Washington, D.C. 20006 |
| (919) 828-5100 | (202) 383-5300 |

ROBERT W. FISHER
CLYDE & CO US LLP
271 17th Street NW Suite 1720
Atlanta, GA 30363
(404) 410-3150

*Counsel for Defendant-Appellee Illinois Union Insurance Company*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 25-1682          Caption: Golden Corral Corporation v. Illinois Union Insurance Company

Pursuant to FRAP 26.1 and Local Rule 26.1,

Illinois Union Insurance Company
(name of party/amicus)



who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                ☑ YES ☐ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

       See attached Exhibit A



3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                          ☑ YES ☐ NO
      If yes, identify all such owners:
       Chubb Limited

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
       If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
       If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
       If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.     Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
       If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Theodore B. Smyth                    Date:  6-30-2025

Counsel for: Defendant Illinois Union Insurance

Print to PDF for Filing

# EXHIBIT A

## TO DISCLOSURE STATEMENT FOR ILLINOIS UNION INSURANCE COMPANY

Illinois Union Insurance Company is a wholly owned subsidiary of Pacific Employers Insurance Co., which is a wholly owned subsidiary of ACE American Insurance Company. ACE American Insurance Company is a wholly owned subsidiary of INA Holdings Corporation, which is a wholly owned subsidiary of INA Financial Corporation. INA Financial Corporation is a wholly owned subsidiary of INA Corporation, which is a wholly owned subsidiary of Chubb INA Holdings Inc. Chubb INA Holdings Inc. is owned 80% by Chubb Group Holdings Inc. and 20% by Chubb Limited. Chubb Group Holdings Inc. is a wholly owned subsidiary of Chubb Limited.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................... 1

STATEMENT OF THE ISSUE.................................................... 4

STATEMENT OF THE CASE ...................................................... 4

    A.    Golden Corral's Claim For Insurance Coverage ...................... 4

    B.    Procedural History .................................................... 6

SUMMARY OF ARGUMENT ................................................... 11

STANDARD OF REVIEW ....................................................... 13

ARGUMENT ........................................................................... 14

I.    GOLDEN CORRAL FAILED TO ESTABLISH
EXTRAORDINARY CIRCUMSTANCES WARRANTING
RULE 60(B)(6) RELIEF ................................................. 15

    A.    The District Court Did Not Abuse Its Discretion In
Determining That Golden Corral Failed To Establish
Extraordinary Circumstances .................................................. 15

        1.    The District Court Properly Applied The Settled
Rule That A Change In Decisional Law Does Not
Amount To An Extraordinary Circumstance
Warranting Rule 60(b)(6) Relief .................................. 16

        2.    As The District Court Correctly Recognized,
Golden Corral's Strategic Litigation Choices
Confirm The Absence Of The Requisite
Extraordinary Circumstances........................................ 23

    B.    Golden Corral's Contrary Arguments Lack Merit.................. 26

        1.    Golden Corral's Effort To Expand The Narrow
"Same Transaction" Exception Is Meritless................. 26

        2.    Golden Corral Mischaracterizes Both The Rule
60(b)(6) Standard And The District Court's
Opinion ......................................................................... 34

II.   DENIAL OF RELIEF IS INDEPENDENTLY WARRANTED
      BECAUSE GOLDEN CORRAL'S CLAIM IS FACIALLY
      BARRED BY THE POLLUTION, CONTAMINATION
      EXCLUSION.................................................................................... 37

      A.   The Policy's Pollution, Contamination Exclusion Bars
           Coverage............................................................................... 38

      B.   Golden Corral's Efforts To Circumvent The Exclusion
           Are Unavailing ..................................................................... 41

           1.   The Exclusion Is Not Limited To Traditional
                Environmental Pollution ............................................... 41

           2.   The Exclusion's Ensuing Loss Provision Does Not
                Create Coverage............................................................ 47

CONCLUSION............................................................................................. 48

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AC Ocean Walk, LLC v. Am. Guarantee & Liab. Ins. Co.*,
   2022 WL 2254864 (N.J. Super. Ct. App. Div. June 23, 2022) .......... 40, 43

*Ackermann v. United States*,
   340 U.S. 193 (1950) ................................................................................ 23

*Agostini v. Felton*,
   521 U.S. 203 (1997) ................................................................................ 16

*Aikens v. Ingram*,
   652 F.3d 496 (4th Cir. 2011) ................................................ 14, 24, 25, 38

*Auto-Owners Ins. Co. v. Potter*,
   105 F. App'x 484 (4th Cir. 2004) ...................................................... 42, 43

*Batts v. Tow-Motor Forklift Co.*,
   66 F.3d 743 (5th Cir. 1995) ........................................................ 16, 17, 26

*Baylor Coll. of Med. v. XL Ins. Am., Inc.*,
   2024 WL 438019 (Tex. App. Feb. 6, 2024) ...................................... 40, 47

*Biggins v. Hazen Paper Co.*,
   111 F.3d 205 (1st Cir. 1997) .................................................................. 33

*Bixby v. Stirling*,
   90 F.4th 140 (4th Cir. 2024) .................................................................. 36

*BLOM Bank SAL v. Honickman*,
   605 U.S. 204 (2025) ........................................................................ passim

*Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*,
   249 F.3d 519 (6th Cir. 2001) ...................................................... 27, 31, 34

*Boyd v. Bulala*,
   905 F.2d 764 (4th Cir. 1990) ................................................................. 38

*Browder v. Dir., Dep't of Corr. of Ill.*,
   434 U.S. 257 (1978) ................................................................................ 13

*Cato Corp. v. Zurich Am. Ins. Co.*,
   909 S.E.2d 144 (N.C. 2024) .......................................................... 4, 9, 39

*Celestine v. Petroleos De Venezuela SA*,
   108 F. App'x 180 (5th Cir. 2004) .......................................................... 32

**Page(s)**

*Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*,
131 F.3d 625 (7th Cir. 1997) .................................................. 17, 20, 26, 28

*Circus Circus LV, LP v. AIG Specialty Ins. Co.*,
525 F. Supp. 3d 1269 (D. Nev. 2021), *aff'd*, 2022 WL
1125663 (9th Cir. 2022)............................................................... 40

*Compton v. Alton S.S. Co.*,
608 F.2d 96 (4th Cir. 1979) ......................................................... 35

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990)..................................................................... 14

*Cosby v. S.C. Prob., Parole & Pardon Servs.*,
93 F.4th 707 (4th Cir. 2024) ........................................................ 37

*DeWeerth v. Baldinger*,
38 F.3d 1266 (2d Cir. 1994) .................................................... 17, 36

*Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*,
993 F.2d 46 (4th Cir. 1993) ................................................... passim

*Erie Railroad Co. v. Tompkins*,
304 U.S. 64 (1938)......................................................................... 1

*Fed. Trade Comm'n v. Elite It Partners, Inc.*,
91 F.4th 1042 (10th Cir. 2024) .................................................... 28

*Fed. Trade Comm'n v. Ross*,
74 F.4th 186 (4th Cir. 2023) .................................................. passim

*Ford of Slidell, LLC v. Starr Surplus Lines Ins. Co.*,
2021 WL 5415846 (E.D. La. Nov. 19, 2021) .............................. 40, 43, 47

*Four Roses LLC v. First Protective Ins. Co.*,
2022 WL 2813270 (N.C. Ct. App. 2022) ...................................... 8

*Golden Corral Corp. v. Ill. Union Ins. Co.*,
2022 WL 3278938 (4th Cir. Aug. 11, 2022) ............................... 9, 22

*Gonzalez v. Crosby*,
545 U.S. 524 (2005)............................................................ 13, 14, 16, 35

*Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Corp.*,
486 S.E.2d 249 (N.C. Ct. App. 1997)............................................ 7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*HCA Crossroads Residential Ctrs., Inc. v. N.C. Dep't of Hum. Res.*,
398 S.E.2d 466 (N.C. 1990)....................................................................... 45

*In re Terrorist Attacks on Sept. 11, 2001*,
741 F.3d 353 (2d Cir. 2013) ....................................................... 28, 29, 30

*Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*,
194 F.3d 922 (8th Cir. 1999) ............................................................. 17, 26

*Keggi v. Northbrook Prop. & Cas. Ins. Co.*,
13 P.3d 785 (Ariz. Ct. App. 2000)............................................................ 40

*Klapprott v. United States*,
335 U.S. 601 (1949)................................................................................... 23

*London Bridge Resort LLC v. Ill. Union Ins. Co.*,
505 F. Supp. 3d 956 (D. Ariz. 2020) ........................................................ 43

*MacKinnon v. Truck Ins. Exch.*,
73 P.3d 1205 (Cal. 2003) ......................................................................... 42

*Marsh v. Marsh*,
816 S.E.2d 529 (N.C. Ct. App. 2018)....................................................... 45

*McGeshick v. Choucair*,
72 F.3d 62 (7th Cir. 1995) ........................................................................ 21

*McLane Co. v. EEOC*,
581 U.S. 72 (2017).................................................................................... 14

*Moses v. Joyner*,
815 F.3d 163 (4th Cir. 2016) .............................................................. 21, 27

*N. State Deli, LLC v. Cincinnati Ins. Co.*,
2020 WL 6281507 (N.C. Super. Ct. 2020)................................................. 7

*N. State Deli, LLC v. Cincinnati Ins. Co.*,
875 S.E.2d 590 (N.C. Ct. App. 2024)......................................................... 8

*N. State Deli, LLC v. Cincinnati Ins. Co.*,
908 S.E.2d 802 (N.C. 2024)........................................................... 1, 9, 39

*Northwell Health, Inc. v. Lexington Ins. Co.*,
550 F. Supp. 3d 108 (S.D.N.Y. 2021) ...................................... 40, 43, 44, 47

*Patterson v. McLean Credit Union*,
130 F.R.D. 617 (M.D.N.C. 1990) ............................................................ 27

*Paul Revere Variable Annuity Ins. Co. v. Zang*,
248 F.3d 1 (1st Cir. 2001) ...................................................................... 25

*Pierce v. Cook & Co.*,
518 F.2d 720 (10th Cir. 1975) ........................................................ 19, 27

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
507 U.S. 380 (1993) ............................................................................... 23

*Priester v. JP Morgan Chase Bank, N.A.*,
927 F.3d 912 (5th Cir. 2019) ................................................................ 18

*Ritter v. Smith*,
811 F.2d 1398 (11th Cir. 1987) .................................................. 18, 19, 29

*Starr Surplus Lines Ins. Co. v. Eighth Jud. Dist. Ct.*,
535 P.3d 254 (Nev. 2023) ............................................................... passim

*Summit Hosp. Grp., Ltd. v. Cincinnati Ins. Co.*,
2025 WL 1671371 (E.D.N.C. June 12, 2025) ...................... 22, 23, 28, 30

*Taja Invs. LLC v. Peerless Ins. Co.*,
717 F. App'x 190 (4th Cir. 2017) ........................................................... 48

*TMW Enters., Inc. v. Fed. Ins. Co.*,
619 F.3d 574 (6th Cir. 2010) ................................................................. 48

*TP Racing LLLP v. Am. Home Assurance Co.*,
2023 WL 3750395 (9th Cir. 2023) ................................................... 40, 41

*U.S. ex rel. Garibaldi v. Orleans Par. Sch. Bd.*,
2003 WL 22174241 (E.D. La. Sept. 18, 2003), *rev'd*, 397
F.3d 344 (5th Cir. 2005) ........................................................................ 33

*U.S. ex rel. Garibaldi v. Orleans Par. Sch. Bd.*,
397 F.3d 334 (5th Cir. 2005) .......................................................... 19, 32

*United States v. Patel*,
2024 WL 2355432 (4th Cir. May 23, 2024) ........................................... 37

*United States v. Welsh*,
879 F.3d 530 (4th Cir. 2018) ................................................................. 14

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*United States v. Williams*,
  674 F.2d 310 (4th Cir. 1982) .................................................. 47

*W. Am. Ins. Co. v. Tufco Flooring E., Inc.*,
  409 S.E.2d 692 (N.C. Ct. App. 1991) ..................................... 42

*W. Union Co. v. Ace Am. Ins. Co.*,
  623 F. Supp. 3d 1153 (D. Colo. 2022) ..................................... 40

*Zwillo V, Corp. v. Lexington Ins. Co.*,
  504 F. Supp. 3d 1034 (W.D. Mo. 2020) ..................... 40, 43, 47

**Statutes**

15 U.S.C. § 2602(2) ...................................................................... 46

33 U.S.C. § 1321(b)(2)(A) ............................................................ 46

42 U.S.C. § 6903(5) ...................................................................... 46

42 U.S.C. § 7412(b)(1) .................................................................. 46

**Other Authorities**

12 Couch on Ins. § 172:12 (3d ed. June 2025 update) ................ 20

COVID Coverage Litigation Tracker, U. Penn Carey L. Sch.,
  https://cclt.law.upenn.edu ....................................................... 33

*Emerging Viral Pathogen Guidance and Status for
  Antimicrobial Pesticides*, EPA,
  https://www.epa.gov/pesticide-registration/emerging-viral-
  pathogen-guidance-and-status-antimicrobial-pesticides .......... 46

## INTRODUCTION

The insurance coverage claim at issue in this appeal is already familiar to this Court. Plaintiffs-appellants Golden Corral Corp. and Golden Franchising Systems, Inc. (collectively, "Golden Corral"), a nationwide chain of buffet restaurants, sought insurance coverage under the property policy issued by defendant-appellee Illinois Union Insurance Co. ("Illinois Union") for its COVID-19 related business income losses. In 2021, the district court granted Illinois Union's motion for judgment on the pleadings. Pursuant to *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and based on careful scrutiny of then-existing North Carolina precedents, the district court predicted that the North Carolina Supreme Court would join the nationwide consensus holding that property insurance policies that require "direct physical loss or damage" to property do not afford coverage for COVID-19 related losses. This Court affirmed that decision in 2022.

Golden Corral now asks this Court to reopen those proceedings. According to Golden Corral, the district court was required to grant its motion to vacate the judgment pursuant to Federal Rule of Civil Procedure 60(b)(6) in light of the North Carolina Supreme Court's subsequent decision in *North State Deli, LLC v. Cincinnati Insurance Co.*, 908 S.E.2d 802 (N.C. 2024), which—contrary to the decisions of this Court and every other appellate court to consider the question—

held that government orders that restricted business operations in response to the spread of the COVID-19 virus caused "direct physical loss or damage" to property.

Golden Corral is mistaken. Rule 60(b)(6)—the so-called "catchall" provision that permits courts to reopen judgments for any "reason that justifies relief"—has been strictly construed to require extraordinary circumstances, and the determination of whether the movant has established such circumstances is committed to the district court's discretion. As the district court recognized when it refused to vacate its prior judgment, the Supreme Court and this Court have repeatedly explained that, in light of the weighty interest in finality, subsequent changes in decisional law, without more, do not qualify as extraordinary circumstances. That principle is at its apex in the *Erie* context, where the possibility of an incorrect "*Erie* guess" is inherent and forcing courts to set aside their judgments anytime a prediction is not borne out would wreak havoc on the interests that finality protects, including parties' reliance and the conservation of judicial resources. Applying that principle, and taking into account that Golden Corral affirmatively sought a quick resolution of its case—rather than seeking a stay pending disposition of *North State Deli*—the district court properly exercised its discretion to determine that Golden Corral failed to demonstrate the requisite extraordinary circumstances.

Undaunted, Golden Corral attempts to fit this case within a narrow scenario recognized by some courts outside this Circuit as supporting Rule 60(b)(6) relief, i.e., where the subsequent change in decisional law arises in a case originating from the *same transaction* as the movant's case. In that scenario—a single car accident with multiple victims, for example—some courts have treated a post-judgment change in decisional law as sufficiently "extraordinary" to warrant granting a Rule 60(b)(6) motion. That narrow exception is inapplicable here. Like *any* subsequent insurance decision that provides relevant new decisional law, *North State Deli* involved facts analogous to Golden Corral's case, but it did not arise from the same transaction. It instead involved different policyholders, different insurers, different insurance policies, and a different set of claims. The district court correctly declined to extend the "same transaction" line of cases to these circumstances. And it was likewise appropriate to treat Golden Corral's deliberate choice to seek an expeditious ruling as a factor weighing against thirteenth-hour relief. For these reasons, the court's denial of the Rule 60(b)(6) motion was well within the wide range of discretion afforded to courts under that provision.

Even setting all of that aside, the denial of Rule 60(b)(6) was independently warranted on an additional ground not reached by the district court: Golden Corral's coverage claim is facially meritless even after *North State Deli*. The

policy contains a "Pollution, Contamination exclusion" that specifically enumerates "virus" as a qualifying pollutant or contaminant and thus bars coverage—an outcome that is not only consistent with *North State Deli*, but was in fact confirmed by *Cato Corp. v. Zurich American Insurance Co.*, 909 S.E.2d 144 (N.C. 2024), the companion coverage case construing another policy issued by the North Carolina Supreme Court on the same day. *Cato* establishes that virus exclusions are to be applied as written in North Carolina, and the plain terms of the policy's exclusion foreclose coverage here. Golden Corral therefore lacks a meritorious claim—a threshold requirement for Rule 60(b)(6) relief.

The judgment should be affirmed.

## STATEMENT OF THE ISSUE

Whether the district court abused its discretion by denying the plaintiff's motion to set aside a judgment pursuant to Rule 60(b)(6) in light of a change in state decisional law, where the subsequent state court decision did not involve the same transaction; the plaintiff failed to seek a stay pending the state court decision; and relief would be futile in any event because the plaintiff's claim lacks merit for other reasons.

## STATEMENT OF THE CASE

### A.    Golden Corral's Claim For Insurance Coverage

Golden Corral is the nation's largest grill-buffet restaurant chain, with approximately 483 locations operating in forty states. JA44-45. Beginning in

March 2020, Golden Corral—like every other business in the United States—became subject to a series of governmental orders that placed restrictions on gatherings and non-essential businesses in an effort to curb the public health threat posed by the spread of the COVID-19 virus. JA48-50; *see also id*. (describing series of such orders issued by Governor Roy Cooper and the North Carolina Department of Health and Human Services). Golden Corral alleges that, as a result of the presence of COVID-19 in the community and resulting governmental orders, Golden Corral and its franchisees were forced to temporarily suspend operations and accordingly sustained business income losses. JA50, 450.

Golden Corral sought to recoup those losses under the property insurance policy issued to it by Illinois Union (the "Policy"). The Policy was effective from March 31, 2019 to March 31, 2020, JA116, and insures "against 'all risks' of direct physical loss, damage or destruction …of the property described and insured in this Policy," "except as hereinafter excluded." JA131. The Policy provides several forms of coverage, including, as relevant here, "Business Interruption" coverage for "loss resulting from the necessary interruption or reduction of business operations conducted by the Insured and caused by physical loss, damage or destruction, by a peril insured by this Policy, of property insured." JA141.

The Policy also contains a "Pollution, Contamination" exclusion. JA149. That exclusion expressly bars coverage for "[l]oss or damage caused by, resulting

5

from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of 'contaminants or pollutants,' all whether direct or indirect, proximate or remote or in whole or in part arising from any cause whatsoever." *Id.* "Contaminants or pollutants" are defined as "any material that after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use of property insured by this Policy, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act, or as designated by the U.S. Environmental Protection Agency." JA150. The exclusion also contains an ensuing loss provision, stating that "if a peril insured by this Policy arises directly or indirectly from pollution or contamination any loss, damage or destruction of property insured by this Policy arising directly from that peril shall (subject to the terms, conditions and limitations of the Policy) be covered." *Id.*

## B. Procedural History

Golden Corral initiated this action in May 2020, and Illinois Union timely removed the case to the U.S. District Court for the Eastern District of North Carolina. JA7. On August 28, 2020, Golden Corral filed an amended complaint, asserting claims for breach of contract and the implied covenant of good faith and

fair dealing and seeking a declaratory judgment that coverage exists under the Policy. JA42-57.

Illinois Union moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) in February 2021. JA207. Golden Corral opposed the motion, relying in part on the trial court decision in *North State Deli, LLC v. Cincinnati Insurance Co*., 2020 WL 6281507 (N.C. Super. Ct. 2020). *See* JA466. Despite knowing that a case involving the interpretation of similar policy language was making its way through the North Carolina state courts, Golden Corral did not seek a stay of the federal action. On the contrary, Golden Corral *affirmatively opposed* any delay in the case, emphasizing its monetary "interest in quickly reaching resolution." JA440.

The district court granted Illinois Union's motion for judgment on the pleadings in an opinion and order issued on September 8, 2021. JA505-527. The court carefully canvassed then-existing North Carolina law, including the intermediate appellate court decision in *Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Insurance Corp*., 486 S.E.2d 249 (N.C. Ct. App. 1997), to fulfill its obligation under *Erie* to predict how North Carolina courts would rule on the coverage question. JA510-526. Based on this analysis, the court predicted that the North Carolina Supreme Court would adopt the overwhelming majority view that "direct physical loss, damage or destruction" requires "a showing of actual,

tangible harm or loss" to property. JA524. The court rejected Golden Corral's reliance on the contrary trial court decision in *North State Deli*, deeming that decision "not persuasive" due to its failure to "cite, much less follow," *Harry's Cadillac.* JA523-524 n.6. Because Golden Corral had failed to plead a distinct, demonstrable alteration to its property as a result of the virus, the court granted Illinois Union judgment on the pleadings. JA526. In light of its interpretation of "direct physical loss, damage, or destruction," the court had no need to address Illinois Union's alternative contention that coverage was barred by the Pollution, Contamination exclusion. JA524 n.7.

Golden Corral appealed. In the meantime, as was apparent to all parties, *North State Deli* continued to progress through the North Carolina court system: the parties addressed the trial court decision in their appellate briefs, and Illinois Union later filed a supplemental authority letter apprising this Court of the intermediate appellate court's decision reversing the trial court decision, *see N. State Deli, LLC v. Cincinnati Ins. Co*., 875 S.E.2d 590 (N.C. Ct. App. 2024), as well as the similar decision in *Four Roses LLC v. First Protective Insurance Co.*, 2022 WL 2813270 (N.C. Ct. App. 2022). JA556. Once again, Golden Corral did not seek a stay from this Court in order to avail itself of the North Carolina state courts' interpretation, as opposed to federal courts' *Erie* prediction of North Carolina law. On August 11, 2022, this Court issued an unpublished per curiam

opinion affirming the district court's order.  *See Golden Corral Corp. v. Ill. Union Ins. Co.*, 2022 WL 3278938 (4th Cir. Aug. 11, 2022).  The mandate issued on September 19, 2022.  *See* 4th Cir. No. 21-2119, Dkt. 36.

On December 13, 2024—more than two years and fourth months after this Court's decision—the North Carolina Supreme Court issued its decisions in *North State Deli* and *Cato*.  In *North State Deli*, the North Carolina Supreme Court adopted an outlier view, shared by no other state or federal appellate court, that a policy that "contains no exclusion for viruses" provides coverage for COVID-19 related economic losses because "direct physical loss or damage" can reasonably be understood to encompass losses from government orders impairing normal business functions.  908 S.E.2d at 805.  It did so without citation to or analysis of *Harry's Cadillac* or *Four Roses.  See id.* at 805-13.  In the *Cato* "companion case," meanwhile, the North Carolina Supreme Court on the same day *rejected* coverage for COVID-19 related losses where the policy contained a "contamination exclusion" that "precludes coverage for direct physical losses caused by viruses." 909 S.E.2d at 146.

The following month, Golden Corral filed a motion in its long-closed case in the district court, seeking to reopen the judgment pursuant to Rule 60(b)(6) in an effort to take advantage of the change in North Carolina law.  JA531.  The district court denied the motion in an order issued on May 14, 2025.  JA665.  The court

reasoned that Golden Corral had failed to demonstrate the "extraordinary circumstances" required by Rule 60(b)(6) in light of the well-settled principle that a subsequent change in decisional law—and in particular, a subsequent state court decision that contradicts an earlier *Erie* prediction by a federal court—does not itself justify Rule 60(b)(6) relief. JA663-664. The court rejected Golden Corral's analogies to cases from other circuits in which special circumstances warranted relief, explaining that the comparison to this "mine-run insurance coverage dispute" was inapt. JA664.

Nor did the fact that the North Carolina Supreme Court does not accept certified questions suffice to "create extraordinary circumstances," since a contrary rule would "open the floodgates for parties to relitigate long-decided cases" and eviscerate the "sanctity of final judgments." JA664 (quoting *Fed. Trade Comm'n v. Ross*, 74 F.4th 186, 194 (4th Cir. 2023)). The absence of extraordinary circumstances was especially apparent in light of Golden Corral's deliberate choice "to be a first-mover in North Carolina COVID-19 insurance litigation." JA664. Not only did Golden Corral fail to seek a stay, the court emphasized, it "vigorously opposed any delay," despite knowing "that *North State Deli* was percolating through the North Carolina courts." *Id.* Golden Corral could not "have it both ways," the court concluded. *Id.* The court thus held that Golden Corral failed to demonstrate the requisite extraordinary circumstances, requiring denial of the

motion.  JA664-665.  In light of this disposition, the district court did not reach the

application of the policy's Pollution, Contamination exclusion, which had been

briefed by the parties and, according to Illinois Union, afforded a further

independent basis for denial of relief.  *See* JA543-549, 637-649, 655-659.

Golden Corral timely appealed.  JA667.

## SUMMARY OF ARGUMENT

I.  A.  The district court did not abuse its discretion in ruling that Golden

Corral failed to identify the kind of "extraordinary circumstances" required to

warrant relief under Rule 60(b)(6).  As the Supreme Court and this Court have

made clear, a mere change in decisional law, without more, does not suffice to

establish extraordinary circumstances.  That principle applies with special force in

*Erie* cases; as courts have repeatedly explained, a subsequent state court decision

demonstrating that a federal court prediction was incorrect does not undermine the

validity of the federal court's prior judgment faithfully discharging its obligations

under *Erie.*  The district court properly exercised its discretion to determine that

the subsequent decision in *North State Deli* did not create extraordinary

circumstances justifying Rule 60(b)(6) relief.

The district court's additional reasons for denial confirm that it acted well

within the bounds of its discretion.  The Supreme Court and this Court have held

that parties may not rely on Rule 60(b)(6) to absolve them of the consequences of

their own deliberate strategic choices. Here, despite its knowledge that *North State Deli* was progressing through North Carolina courts, Golden Corral made the strategic choice to press for a quick resolution of its case rather than requesting a stay of the proceedings to allow for the development of North Carolina law in the state courts. The district court correctly exercised its discretion to determine that, having made the judgment that a quick resolution of its case would be more beneficial to its interests, Golden Corral could not use Rule 60(b)(6) to backtrack on that decision with the benefit of hindsight.

B. In response, Golden Corral primarily contends that the *North State Deli* decision required the district court to grant its Rule 60(b)(6) motion because that case is closely related to Golden Corral's coverage litigation. Golden Corral is wrong. While courts outside this Circuit have found extraordinary circumstances justifying relief where courts have reached diverging outcomes in cases arising out of the *same incident* in a narrow sense, such as a single car accident, that line of cases has no application here. Just like any other case that provides a rule of insurance law that is applicable in similar future cases, *North State Deli* applied similar policy language to analogous claims. Because it involved different parties, a different policy, and different claims, however, the "same transaction" line of cases is inapplicable, and the general rule—that a change in decisional law does not afford a basis for Rule 60(b)(6) relief—applies with full force.

II.  The denial of Rule 60(b)(6) is independently warranted for the further reason that the insurance policy's Pollution, Contamination exclusion, which defines "virus" as an excluded pollutant or contaminant, bars Golden Corral's claim of coverage.  The North Carolina Supreme Court's companion decision in *Cato* confirms that North Carolina courts apply virus exclusions as written, and the Pollution, Contamination unambiguously applies by its plain terms to foreclose coverage for Golden Corral's claims.  In its district court briefing, Golden Corral asserted that the exclusion in its policy differs from the exclusion in *Cato* because it includes additional language purportedly limiting the exclusion to traditional environmental pollution.  Golden Corral is incorrect.  Numerous courts have held that exclusions with language identical to the exclusion in Golden Corral's policy bar coverage for COVID-19 related losses.  Golden Corral's effort to write the word "virus" out of the Pollution, Contamination exclusion is unavailing.  Because its coverage claim lacks merit, Golden Corral also fails to satisfy the threshold requirements for Rule 60(b)(6) relief, providing a further basis to affirm.

## STANDARD OF REVIEW

This Court reviews a district court's ruling on a Rule 60(b) motion "only for abuse of discretion."  *Browder v. Dir., Dep't of Corr. of Ill.*, 434 U.S. 257, 263 n.7 (1978).  That standard is "limited and deferential," *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005), and affords courts "a wide range of choice," *BLOM Bank SAL v.*

*Honickman*, 605 U.S. 204, 217 (2025) (quoting *McLane Co. v. EEOC*, 581 U.S. 72, 83 (2017)). "To be upheld, a district court's decision need only 'apply the correct legal standard and offer substantial justification' for its conclusion." *Id.* at 216 (alterations omitted) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

## ARGUMENT

A Rule 60(b) motion "threaten[s] an already final judgment with successive litigation." *BLOM Bank*, 605 U.S. at 215 (quotation omitted). A "very strict interpretation of Rule 60(b)" is therefore "essential if the finality of judgments is to be preserved." *Ross*, 74 F.4th at 190-91 (quoting *Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011) (en banc)). To that end, this Court has required a party seeking relief under Rule 60(b) to demonstrate "(1) that the motion is timely, (2) that [it] has a meritorious claim or defense, … (3) that the opposing party will not suffer unfair prejudice if the judgment is set aside," and (4) that "one of six enumerated grounds for relief under Rule 60(b)" is satisfied. *United States v. Welsh*, 879 F.3d 530, 533 (4th Cir. 2018). To prevail under subsection 60(b)(6)—the "catch-all provision" invoked by Golden Corral, which allows judgments to be vacated for "any other reason that justifies relief"—a movant must make the further showing of "extraordinary circumstances." *Ross*, 74 F.4th at 194 (quoting *Gonzalez*, 545 U.S. at 536).

Golden Corral failed to satisfy two of these essential elements: extraordinary circumstances and a meritorious claim. The district court thus acted well within its discretion in denying Golden Corral's Rule 60(b)(6) motion.

## I. GOLDEN CORRAL FAILED TO ESTABLISH EXTRAORDINARY CIRCUMSTANCES WARRANTING RULE 60(B)(6) RELIEF

Because Rule 60(b)(6) motions are not subject to the one-year time limit that applies to other subsections, they pose a "particular" threat to the finality of "judgments years after they are entered" and accordingly must satisfy a "stringent" "extraordinary circumstances" test. *BLOM Bank*, 605 U.S. at 214-15. Golden Corral falls far short of that demanding standard, and each of its counterarguments is unavailing.

### A. The District Court Did Not Abuse Its Discretion In Determining That Golden Corral Failed To Establish Extraordinary Circumstances

As the district court correctly determined, Golden Corral failed to establish extraordinary circumstances for two reasons: it relied on a subsequent change in decisional law, which has widely been recognized as insufficiently extraordinary to justify relief; and it made strategic choices in the litigation that contributed to its current circumstances, which independently undermines any finding of the requisite extraordinary circumstances.

1.	*The District Court Properly Applied The Settled Rule That A Change In Decisional Law Does Not Amount To An Extraordinary Circumstance Warranting Rule 60(b)(6) Relief*

a.  The Supreme Court and this Court have repeatedly recognized that a subsequent change in decisional law "is hardly extraordinary" and thus generally does not satisfy the Rule 60(b)(6) standard.  *Gonzalez*, 545 U.S. at 536.  Indeed, it is "a core tenet[] of Rule 60(b) doctrine" that "[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)."  *BLOM Bank*, 605 U.S. at 216 (quoting *Agostini v. Felton*, 521 U.S. 203, 239 (1997)); *see Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993) (a mere "change in decisional law subsequent to a final judgment provides no basis for relief under Rule 60(b)(6)").  A contrary rule, this Court has explained, "would effectively eviscerate finality interests and open the floodgates to newly meritorious 60(b)(6) motions each time the law changes."  *Ross*, 74 F.4th at 194.

This principle applies with even "greater force in an *Erie* case because in this context a federal court is doing no more than fulfilling its obligation scrupulously to determine how a state court would decide a question."  *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 750 (5th Cir. 1995).  In reversing a district court's grant of a Rule 60(b)(6) motion as an abuse of discretion, the Fifth Circuit explained that the fact that "a subsequent state court resolves the question

differently does not render the federal diversity court decision invalid, or mar the proceeding as unfair." *Id.* The Second Circuit reversed a district court's grant of a Rule 60(b)(6) motion as an abuse of discretion for similar reasons, observing that the "very nature of diversity jurisdiction leaves open the possibility that a state court will subsequently disagree with a federal court's interpretation of state law," but that "aspect of our dual justice system does not mean that all diversity judgments are subject to revision once a state court later addresses the litigated issues." *DeWeerth v. Baldinger*, 38 F.3d 1266, 1273-74 (2d Cir. 1994). "Such a rule would be tantamount to holding that the doctrine of finality does not apply to diversity judgments, a theory that has no basis in *Erie* or its progeny." *Id.* Numerous other decisions are in accord. *See, e.g.*, *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 131 F.3d 625, 628 (7th Cir. 1997) (recognizing that "[d]iversity cases under *Erie* present a particular concern for finality" because courts in such cases "make a studied effort to determine how a state's highest court would interpret the law in question" and, while "as in any human endeavor, such predictions are not always accurate," that "does not mean that the decision of the federal court—where the prediction is rendered incorrect by a subsequent state supreme court decision—warrants being set aside under Rule 60(b)"); *Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 194 F.3d 922, 925 (8th Cir. 1999) ("[T]here is nothing in the *Erie* doctrine that requires federal courts to sacrifice the

finality of their judgments because state courts subsequently interpret state law differently than the federal courts have done."). Those considerations are even more salient in North Carolina, which—as Golden Corral itself emphasizes, *see* Opening Brief ("OB") at 23—has affirmatively encouraged federal courts to construe North Carolina law via *Erie* predictions because it has opted not to establish a procedure for federal courts to certify questions to the North Carolina Supreme Court.

To demonstrate an entitlement to Rule 60(b)(6) relief, then, a movant must establish more than the fact that they were at the "losing end of what turned out to be an incorrect *Erie* guess." *Priester v. JP Morgan Chase Bank, N.A.*, 927 F.3d 912, 912 (5th Cir. 2019). Some decisions outside this Circuit have granted Rule 60(b)(6) motions where "a change in decisional law combines with other factors to tip the delicate balance between the sanctity of final judgments ... and the incessant command of the court's conscience that justice be done in light of all the facts." *Id.* at 913 (quotation omitted); *but see id.* (noting that Fifth Circuit itself had apparently not "ever found such a situation"). In *Ritter v. Smith*, 811 F.2d 1398 (11th Cir. 1987), for example, the Eleventh Circuit deemed Rule 60(b)(6) relief appropriate in light of a confluence of unique circumstances including (1) the court's previous judgment had not been executed, reducing the interest in finality; (2) the judgment bore prospective effects analogous to those of injunctions or

consent decrees, which courts recognize may be modified in light of subsequent changes in law; (3) there were habeas-specific comity considerations favoring vacatur in a particularly weighty context, *viz.*, the constitutionality of a state death sentence; (4) little time had elapsed between the finality of the judgment and the Rule 60(b) motion; and (5) the Supreme Court had granted certiorari for the express purpose of resolving a split between the case at issue and another decision, *id.* at 1401-03.[1]  Along similar lines, in *Pierce v. Cook & Co.*, 518 F.2d 720 (10th Cir. 1975), the Tenth Circuit deemed Rule 60(b) relief proper to avoid "substantially different treatment" of two plaintiffs who were "injured in the same [automobile] accident," *id.* at 723.  Because the cases arose from "the same transaction or occurrence"—namely, "a common vehicular accident"—the "unusual combination of events" justified vacatur of the federal judgment.  *Id.*[2]

---

[1] Notably, *Ritter* nowhere suggested that this aspect of the Supreme Court's grant of certiorari, without more, would have sufficed to justify Rule 60(b) relief. *See U.S. ex rel. Garibaldi v. Orleans Par. Sch. Bd.*, 397 F.3d 334, 338-39 (5th Cir. 2005) (explaining that *Ritter* does not stand for that proposition in light of the numerous other factors weighing in favor of relief in that case, and holding that "an extraordinary situation justifying relief from judgment is not created every time the Supreme Court lists a case as one that merely contributed to a split between circuits").  Nor would such a rule be consistent with the law in this Circuit.  *See Ross*, 74 F.4th at 194 ("It is not extraordinary for the Supreme Court to deny certiorari in a court of appeals case that it ultimately overrules in the review of a later similar case." (quoting *Garibaldi*, 397 F.3d at 339)).

[2] The standard some courts apply to determine whether separate cases arise from a common transaction for Rule 60(b) purposes differs from the standard courts apply in determining the number of occurrences for insurance coverage

As *Pierce* and *Ritter* demonstrate, even those courts that have permitted Rule 60(b) relief based in part on a change in decisional law have done so where the change combines with significant other factors, in very narrow and unusual circumstances. In the far more typical scenario, like this one, where two cases simply involve similar fact patterns or arise in the same general context, courts routinely deny Rule 60(b)(6) motions. *See, e.g.*, *Dowell*, 993 F.2d at 48 (affirming denial of Rule 60(b)(6) motion where both initial judgment and subsequent state court decision involved interpretation of state uninsured motorist statute in context of insurance coverage for different automobile accidents); *Flanders*, 131 F.3d at 626-27 (affirming denial of Rule 60(b)(6) motion where initial judgment and subsequent state court decisions both involved interpretation of the language "sudden or accidental" within standard pollution exclusion clause language in context of industrial contamination). Indeed, in almost *any* situation where a subsequent decision affects principle of law applied in an earlier judgment, the cases will involve similar fact patterns or contexts, because otherwise the subsequent decision would be materially distinguishable and hence irrelevant. Such circumstances afford no basis for special treatment in the Rule 60(b)(6) context; instead, cases in that category fall firmly within the ambit of the ordinary

---

purposes. *See* 12 Couch on Ins. § 172:12 (3d ed. June 2025 update). That distinction has no bearing on the issues involved in this appeal.

rule that "a change in decisional law subsequent to a final judgment provides no basis for relief under Rule 60(b)(6)." *Moses v. Joyner*, 815 F.3d 163, 168-69 (4th Cir. 2016).

   b.   Applied here, these principles amply support the district court's determination that Golden Corral failed to establish extraordinary circumstances. Much like the subsequent state-law insurance decisions in *Dowell* and *Flanders*, the *North State Deli* decision involved a similar fact pattern and interpreted insuring agreement language similar to the language at issue here, but *North State Deli* involved a different lawsuit arising from different insureds asserting different claims involving different property and different insurance policies issued by a different insurance company.  In these circumstances, the fact that the district court's *Erie* prediction, affirmed by this Court, was ultimately displaced by *North State Deli* does not "pose a direct clash between the need for finality in litigation and the policies embodied in the *Erie* doctrine." *McGeshick v. Choucair*, 72 F.3d 62, 64 (7th Cir. 1995).  All that *Erie* requires is "that, at the time of decision, the federal court apply the law of the state in which it sits.  It does not require that later changes in that state law be treated as a ground for reopening that judgment." *Id.* at 64-65.  Here, the district court faithfully discharged its obligation under *Erie*, analyzing then-existing North Carolina appellate precedents and reaching a soundly-reasoned outcome that correctly predicted the then-forthcoming

intermediate appellate court decision in *North State Deli*. *See supra* at 7-8. This Court recognized as much in affirming the decision. *See Golden Corral*, 2022 WL 3278938, at *1. That the North Carolina Supreme Court ultimately adopted a distinctly outlier stance—and did so without reference to, let alone reconciliation with, the North Carolina appellate precedents on which the district court relied in formulating its prediction—does not require the district court and this Court to sacrifice the finality of their judgments by reopening the case at this belated juncture.

Little wonder, then, that another judge with the Eastern District of North Carolina recently reached the same outcome as the district court in this case in connection with a Rule 60(b)(6) motion filed by Golden Corral's counsel on behalf of a different insured that also asserted COVID-19 related losses under a property insurance policy subject to North Carolina law. In *Summit Hospitality Group, Ltd. v. Cincinnati Insurance Co.*, 2025 WL 1671371 (E.D.N.C. June 12, 2025), the court determined that the insured "fail[ed] to demonstrate extraordinary circumstances warranting relief" because "removal to federal court based on diversity is not extraordinary, and neither are intervening legal developments" like the *North State Deli* decision, *id.* at *2. Even if the court were to follow the non-binding decision in *Pierce*, moreover, it was distinguishable because "the *North State Deli* decision does not involve the same transaction or occurrence." *Id.* The

court accordingly denied the Rule 60(b)(6) motion.  *Id.*  The same result is warranted here.

> ### 2. *As The District Court Correctly Recognized, Golden Corral's Strategic Litigation Choices Confirm The Absence Of The Requisite Extraordinary Circumstances*

While the foregoing principles suffice to affirm the district court's decision, the district court's additional reasons for denying Rule 60(b)(6) relief confirm that the court's ruling was well within its discretion.  Another "core tenet[]" of "Rule 60(b) doctrine" is that "extraordinary circumstances must suggest that the movant is faultless."  *BLOM Bank*, 605 U.S. at 216 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993)).  Otherwise, relief is not necessary to "accomplish justice."  *Dowell*, 993 F.2d at 48 (quoting *Klapprott v. United States*, 335 U.S. 601, 615, (1949)).  Because there "must be an end to litigation someday," parties are not entitled "to be relieved from" their "free, calculated, deliberate choices."  *BLOM Bank*, 605 U.S. at 212 (quoting *Ackermann v. United States*, 340 U.S. 193, 198 (1950)).  Notably, a party's decision is no less "calculated and deliberate" simply because it was born of financial necessity.  *See Ackermann*, 340 U.S. at 197-98 (determining that party would not be relieved of its "considered choice not to appeal" when "hindsight seem[ed] to indicate to him that his decision not to appeal was probably wrong," even though choice was based on the belief that "he would have to sell his home to pay costs" of an appeal).

Applying these principles, this Court has recognized that relief is not available when a Rule 60(b) movant's "posited predicament" stems from the movant's "management of the action and [its] litigation strategy choices." *Aikens*, 652 F.3d at 503. In other words, Rule 60(b)(6) cannot be used "as a bypass around routinely available procedures" where the "failure to use those procedures was the product of [the movant's] strategic litigation choices." *Id.* at 502.

That rule independently forecloses Golden Corral's challenge to the district court's denial of relief. As the district court correctly observed, Golden Corral was well aware of the fact that "*North State Deli* was percolating through the North Carolina courts" during this litigation. JA664. Nevertheless, Golden Corral made no effort to pursue a stay pending disposition of *North State Deli*, which would have enabled the parties and courts to account for a final decision in that case. To the contrary, Golden Corral affirmatively urged the district court *not* to delay, but instead to make a prompt *Erie* prediction about the substance of North Carolina law. *See supra* at 7; JA440-441.[3] Golden Corral thus made a strategic gamble: it opted for a faster resolution of its case, hoping to secure financial benefits as a

---

[3] Given that Golden Corral could have sought a stay pending *North State Deli*, there is no merit in Golden Corral's suggestion (OB23-24) that removal to federal court deprived it of the opportunity to avail itself of a state court interpretation in its case, notwithstanding that North Carolina lacks a certification procedure.

result, but at the cost of forgoing the potential advantage of additional development of North Carolina law—including in the very case that Golden Corral now seeks to benefit from. This case is thus on all fours with *Aikens*, where the movant failed to take advantage of several procedures including seeking a "stay …pending exhaustion of administrative remedies," appealing, or "fil[ing] a new action." 652 F.3d at 502-03. The same was true in *Dowell*, where the movant made a "voluntary, deliberate, free, untrammeled choice" to refrain from either seeking "certif[ication] to the West Virginia Supreme Court of Appeals" or filing an appeal. 993 F.2d at 47-48.[4] Golden Corral does not and cannot justify different treatment here. As these cases show, the "law presumes that parties will make choices to protect their legal interests, even though those choices may at times involve a calculated risk," and Rule 60(b)(6) is not available to afford litigants another bite at the apple to revise those deliberate strategic decisions with the benefit of hindsight. *Paul Revere Variable Annuity Ins. Co. v. Zang*, 248 F.3d 1, 6 (1st Cir. 2001).

Notably, even where Rule 60(b)(6) movants sought and were *denied* stays pending the decisions that form the basis of a later change in decisional law, courts

---

[4] As these cases demonstrate, and contrary to Golden Corral's submission (OB25), the deliberate choices that may operate to warrant denial of Rule 60(b) relief include, but are by no means limited to, the decision not to appeal.

have nevertheless deemed the circumstances insufficiently extraordinary to require relief. *See, e.g.*, *Flanders*, 131 F.3d at 627 (denial of relief affirmed where movant previously moved for stay pending same state decision cited as basis for the Rule 60(b)(6) motion); *Batts*, 66 F.3d at 746 (same). Against that backdrop, the district court's denial of relief due in part to the fact that Golden Corral did not even take the minimal step of asking for a stay, and instead affirmatively sought acceleration of its litigation, was an eminently reasonable exercise of discretion. *See Reimer*, 194 F.3d at 925-26 ("no abuse of discretion" in denial of Rule 60(b)(6) motion on basis of party's "course of conduct during th[e] litigation," even though several "factors [that] have been considered relevant in other cases" supported relief).

## B. Golden Corral's Contrary Arguments Lack Merit

Golden Corral urges this Court to set aside the district court's denial of relief as an abuse of discretion by attempting to fit this case within a narrow fact pattern inapplicable here and by otherwise misstating the applicable law and the decision below. These efforts are unavailing.

### 1. *Golden Corral's Effort To Expand The Narrow "Same Transaction" Exception Is Meritless*

Golden Corral's primary argument on appeal is that this case is analogous to *Pierce*, where the Tenth Circuit determined that "extraordinary circumstances" existed for purposes of Rule 60(b)(6) when a change in state law yielded diverging outcomes for plaintiffs in two cases arising out of the same automobile accident.

518 F.2d at 723; *see supra* at 19.  That holding is inconsistent with this Court's

precedents, which, as noted, have instead squarely held that "a change in decisional

law subsequent to a final judgment provides no basis for relief under Rule

60(b)(6)." *Moses*, 815 F.3d at 168-69 (quoting *Dowell*, 993 F.2d at 48).[5]  But even

assuming this Court would adopt a comparable "same transaction" exception to the

general rule, it plainly would have no application here:  the decision below and

*North State Deli* did not arise out of the same "transaction or occurrence," *Pierce*,

518 F.2d at 723, but instead involved different insureds asserting their own

particular set of claims relating to their distinct businesses under different

insurance policies issued by different insurers.  This case thus bears no

resemblance to the decisions in which the *Pierce* exception has been applied.  *See*

*Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*, 249 F.3d 519,

525 (6th Cir. 2001) (collecting cases in "same transaction" line, including cases

involving single car accident; case involving "recovery under the same promissory

note," and another involving "recovery under the same shareholders agreement").

That the instant case and *North State Deli* involve similar legal issues plainly does

---

[5] Golden Corral's reliance on *Patterson v. McLean Credit Union*, 130 F.R.D. 617 (M.D.N.C. 1990), for the proposition that a court within the Fourth Circuit has cited *Pierce* with approval (OB20) is misplaced.  In *Patterson*, the court simply "[a]ssum[ed] *arguendo* that a motion to reopen a judgment based on the grounds of a subsequent change in state decisional law may properly be made under Rule 60(b)" before denying relief.  *Id.* at 618 n.1.

not suffice.  *See Flanders*, 131 F.3d at 627 (subsequent state high court insurance-law decision "involving issues quite similar to those presented to us" did not warrant Rule 60(b)(6) relief); *Summit Hosp.*, 2025 WL 1671371, at *2 (denying Rule 60(b)(6) motion because "the *North State Deli* decision does not involve the same transaction or occurrence" as another insured's COVID-19 related coverage claims).  Indeed, the Tenth Circuit itself has recently clarified that *Pierce* extends only to circumstances where the parties in the first case were themselves "involved in the events giving rise to" the subsequent case, *Fed. Trade Comm'n v. Elite It Partners, Inc.*, 91 F.4th 1042, 1050 (10th Cir. 2024)—a requirement that Golden Corral cannot satisfy.

Golden Corral's cited cases confirm as much.  Besides *Pierce* itself, Golden Corral identifies only two other cases involving a change in decisional law where Rule 60(b)(6) relief was granted:  the Eleventh Circuit's decision in *Ritter* and the Second Circuit's decision in *In re Terrorist Attacks on Sept. 11, 2001*, 741 F.3d 353 (2d Cir. 2013).  As an initial matter, neither case arose in the *Erie* context, where, as discussed, the presumption against granting Rule 60(b)(6) relief for subsequent changes in law is at its apex.  *See supra* at 16-18.  Even setting aside that distinction, neither case supports Golden Corral's proposed extension of *Pierce.*  To the extent *Ritter* analogized to *Pierce* in deeming two cases related "because the supervening decision was rendered to resolve a conflict between

28

them," *Ritter*, 811 F.2d at 1402-03, that reasoning is of no help to Golden Corral for three reasons. First, it is not applicable in this case, where the Golden Corral litigation was neither essential to the North Carolina Supreme Court's grant of review nor "expressly address[ed]" by the *North State Deli* decision. *Id.* at 1400. Second, this Court has already rejected the proposition that a case merely falling on the wrong side of a split of authority following a high court's resolution of the split qualifies as "extraordinary" for Rule 60(b)(6) purposes. *See Ross*, 74 F.4th at 194; *supra* at 19 n.1. Third, and finally, the *Ritter* court deemed relief justified only in combination with numerous additional factors, such as habeas-specific heightened comity considerations and diminished finality concerns due to an unexecuted judgment. *See supra* at 18-19. None of those factors applies here. By contrast, given Golden Corral's failure to seek a stay, this case *does* involve a circumstance that *Ritter* acknowledged would weigh against relief. *See Ritter*, 811 F.2d at 1404 (acknowledging that where a movant "failed to avail itself of opportunities which it had to suspend the finality of the district court's … order," that "factor would weigh against reopening a final judgment").

Golden Corral's reliance on *Terrorist Attacks* is even further afield. The Second Circuit permitted Rule 60(b)(6) relief in that case to avoid inconsistent results between "victims of the same tort." *Terrorist Attacks*, 741 F.3d at 357. Golden Corral mischaracterizes the case as involving "victims of a *related*

incident" (OB22 (emphasis added)), but the Second Circuit in fact repeatedly emphasized that the two cases arose from "the *same* incident"—the 9/11 terrorist attacks. 741 F.3d at 357, 358, 359 (emphasis added). Unlike that incident, COVID-19 was not a singular tort affecting the same localized, targeted victims. Instead, it was a prolonged, widespread natural phenomenon that caused losses to disparate businesses worldwide. *See Summit Hosp.*, 2025 WL 1671371, at *2 (rejecting reliance on *Terrorist Attacks* because cases arising out of 9/11 attacks "involved victims of the same transaction or occurrence" for Rule 60(b)(6) purposes). What is more, the Second Circuit made clear in *Terrorist Attacks* that its ruling was the product of a unique procedural posture, including that the movants "were never able to obtain review of the District Court's basis for dismissing their claims" and that the change in law came about through "the Court's use of the unusual 'mini-en banc process'" to overrule its own prior precedent within three years. 741 F.3d at 358-59. Golden Corral thus derives no support from this fact-bound, highly distinguishable decision.

Conversely, courts have consistently rejected efforts to expand the *Pierce* exception in the manner urged by Golden Corral—including in several cases on which Golden Corral mistakenly relies. In *Blue Diamond*, for instance, the movant had obtained Rule 60(b)(6) relief from the district court on the basis of the "'same transaction' line of cases" under *Pierce*, contending that all "coal companies

affected by the 1992 Coal Act were multiple parties to a common transaction" in light of "substantially identical … historical contractual activity with the UMWA," such that a subsequent Supreme Court decision that invalidated a provision of the Coal Act should be understood as closely related to the movant's case. 249 F.3d at 525 (quotation omitted). The Sixth Circuit rejected the argument and reversed the order granting Rule 60(b)(6) relief. *Id.* at 526. According to the Sixth Circuit, true "same transaction" cases all involve "a much tighter nexus of common activity, common rights, and common liability." *Id.* Although the movant had identified a "fixed and identifiable universe of affected parties," its argument that "a common history of negotiation between the coal industry and the UMWA leading to the passage of the Coal Act constitutes a 'common transaction'" contained "no limiting principle analogous to a singular event, such as a car accident, or a singular contract." *Id.* Interpreting the concept of the "same transaction" for Rule 60(b) purposes that broadly, the court emphasized, would "render our legal system's strong presumption in favor of the finality of judgments and termination of litigation meaningless." *Id.* (quotation omitted). The court accordingly held that the district court abused its discretion in granting relief from the final judgment. *Id.* at 529. The same principles apply with even greater force here, where Golden Corral cannot even ascertain a "fixed and identifiable universe of affected parties" in connection with the COVID-19 pandemic. *Id.* at 526.

The Fifth Circuit similarly rebuffed an effort to expand the "same transaction" exception in *Celestine v. Petroleos De Venezuela SA*, 108 F. App'x 180 (5th Cir. 2004). In *Celestine*, the movants expressly invoked "the 'same transaction' line of cases following *Pierce*" to argue that, absent Rule 60(b)(6) relief, "a change in decisional law" would "generate[] divergent judgments for litigants involved in the same transaction," with one case subject to the former legal standard and another case subject to the new standard. *Id.* at 184 n.6. Notwithstanding that the cases had been consolidated with one another, the court determined that they were insufficiently related for Rule 60(b)(6) purposes: though the plaintiffs "both filed suit complaining of matters while employed at the same CITGO [Petroleum Corporation] plant, each individual plaintiff experienced different incidents of harassment, and worked under different supervisors at different times." *Id.* The plaintiffs' "consolidated, individual claims" thus did not arise from the "same transaction." *Id.* Under the logic of *Celestine*, the much more attenuated connection between *North State Deli* and the Golden Corral litigation plainly does not support Rule 60(b)(6) relief.

*Celestine* echoed the Fifth Circuit's earlier ruling in *Garibaldi*, which likewise rejected an overbroad conception of what constitutes a "closely related" case. 397 F.3d at 338. The court recognized that it does not suffice for a new decisional rule to arise in a "similar case." *Id.* at 339. In doing so, it reversed the

grant of Rule 60(b)(6) relief by the district court, rejecting that court's mistaken view that "the fact that these three cases were all under consideration at substantially the same time and played a role in the Supreme Court's decision" rendered them related enough to support vacatur of the judgment. *U.S. ex rel. Garibaldi v. Orleans Par. Sch. Bd*., 2003 WL 22174241, at *7 (E.D. La. Sept. 18, 2003), *rev'd*, 397 F.3d 344 (5th Cir. 2005).

Each of these decisions recognizes that the *Pierce* exception must be construed narrowly to avoid eroding "bedrock finality interests." *Ross*, 74 F.4th at 195. As the First Circuit put it, Rule 60(b)(6) relief in these circumstances should be "the rarest of possibilities," since "[d]ecisions constantly are being made by judges which, if reassessed in light of later precedent, might have been made differently." *Biggins v. Hazen Paper Co*., 111 F.3d 205, 212 (1st Cir. 1997) (emphasis omitted). Golden Corral's proposed rule flies in the face of that principle by treating as closely related the more than two thousand COVID-19 coverage cases filed by insureds since 2020 (including more than two dozen cases in North Carolina alone). *See* COVID Coverage Litigation Tracker, U. Penn Carey L. Sch., https://cclt.law.upenn.edu.

Indeed, Golden Corral gives the game away when it eventually acknowledges that its Rule 60(b)(6) motion seeks to avoid "different results" in its case relative to "*similar cases* proceeding in state court." OB24 (emphasis added).

*North State Deli* certainly bears similarities to Golden Corral's case—just as, for example, in *Dowell*, the subsequent state court decision interpreting West Virginia's uninsured motorist statute in the context of an automobile accident was similar to an earlier federal court decision interpreting the same statute in the context of a different automobile accident. *See Dowell*, 993 F.2d at 47. Yet in *Dowell*, as here, mere similarity was not enough to justify Rule 60(b)(6) relief. *Dowell* and other cases instead firmly establish that unless the subsequent case arises from the same transaction or incident involving a "tight[] nexus" of commonality, *Blue Diamond*, 249 F.3d at 526, there is no basis for departure from the ordinary rule foreclosing relief from an earlier final judgment in a "similar" case. A contrary "conclusion that such a circumstance justifies vacatur would effectively eviscerate finality interests and open the floodgates to newly meritorious 60(b)(6) motions each time the law changes"—a result this Court has already rejected. *Ross*, 74 F.4th at 194.

2.  *Golden Corral Mischaracterizes Both The Rule 60(b)(6) Standard And The District Court's Opinion*

Beyond its misplaced reliance on the "same transaction" exception, Golden Corral proffers a handful of other contentions that mischaracterize both the legal standard and the decision below.

To start, Golden Corral misstates the standard for relief under Rule 60(b), suggesting that "the United States Supreme Court has 'give[n] little weight to …

appeal[s] to the virtues of finality'" because "'[t]hat policy consideration, standing alone, is unpersuasive in the interpretation of a provision whose whole purpose is to make an exception to finality.'" OB10 (quoting *Gonzalez*, 545 U.S. at 529). Golden Corral plucks that language from *Gonzalez* out of context. In the quoted portion of *Gonzalez*, the Court was analyzing whether and what circumstances a Rule 60(b) motion asserted in habeas proceedings constituted a successive habeas petition. *See* 545 U.S. at 528-36. In that context, a freestanding interest in the finality of judgments did not suffice to automatically subject all Rule 60(b) motions to the strictures of AEDPA. *See id.* When it came to the actual application of Rule 60(b) standards, however, the Supreme Court recognized— consistent with this Court's rule, *see supra* at 14—that "extraordinary circumstances" are required to justify Rule 60(b)(6) relief precisely because of the strong countervailing interest in "the finality of judgments." 545 U.S. at 535 (quotation omitted).

Along similar lines, Golden Corral errs in reciting the hoary slogan that Rule 60(b) provides courts with "a grand reservoir of equitable power." OB10 (quoting *Compton v. Alton S.S. Co*., 608 F.2d 96, 106-07 (4th Cir. 1979)). As this Court has emphasized much more recently, the "grand reservoir" conception of Rule 60(b)(6) has been tempered by the "extraordinary circumstances" requirement, such that, notwithstanding the Rule's "open-ended language," its "scope" has been "firmly

reined in." *Bixby v. Stirling*, 90 F.4th 140, 147 (4th Cir. 2024) (quotations omitted).

Next, Golden Corral misstates the role of the *Erie* doctrine in the Rule 60(b)(6) analysis. According to Golden Corral, vacatur of the judgment is mandated here by a "core tenet" of *Erie*—namely, that results should be consistent between federal and state courts. OB8. Yet Golden Corral ignores that, as the cases described above explain, *see supra* at 16-18, "*Erie* and its progeny require no more than" that federal courts "conscientiously satisf[y]" their "duty to predict how [state] courts would decide" the question before them. *DeWeerth*, 38 F.3d at 1274. As discussed, *see supra* at 7-9, 21-22, the prior efforts of the district court and this Court in this case dutifully fulfilled that obligation and made a reasonable *Erie* prediction on the basis of then-existing North Carolina law and near-uniform authority nationwide. That a state case involving similar facts and legal issues, yet "unrelated" to Golden Corral's case in the relevant sense, later changed the applicable state law does not require that the district court's judgment be "revisited," since there is "nothing in *Erie* that suggests that consistency must be achieved at the expense of finality." 38 F.3d at 1274.

Finally, Golden Corral mischaracterizes the decision below. Golden Corral repeatedly accuses the district court of "stat[ing] that a change in decisional law never provides a basis for relief under Rule 60(b)(6)." OB11-12; *see* OB2, 7, 13.

Not so.  The district court correctly set forth this Court's rule—that "a change in state decisional law *generally* does not justify relief under Rule 60(b)(6)."  JA664 (emphasis added).  The court did not abuse its discretion when, applying that rule to this case, it determined that the requisite extraordinary circumstances justifying Rule 60(b)(6) were absent, both because *North State Deli* represented a routine subsequent change in state decisional law *and* because Golden Corral's failure to seek a stay was a deliberate strategic choice that contributed to its inability to take advantage of the later state decision.

## II.  DENIAL OF RELIEF IS INDEPENDENTLY WARRANTED BECAUSE GOLDEN CORRAL'S CLAIM IS FACIALLY BARRED BY THE POLLUTION, CONTAMINATION EXCLUSION

Beyond the absence of "extraordinary circumstances," the denial of Rule 60(b)(6) relief is independently warranted because even after *North State Deli*, Golden Corral's coverage claim is facially meritless under the Policy's Pollution, Contamination exclusion.  This further basis for denial was fully briefed below, *see* JA543-549, 637-649, 655-659, and although the district court had no occasion to reach the question, this Court may affirm a Rule 60(b) denial "on any basis apparent from the record."  *United States v. Patel*, 2024 WL 2355432, at *1 (4th Cir. May 23, 2024) (per curiam) (quoting *Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 722 n.19 (4th Cir. 2024)).

While the appeal of a district court's denial of Rule 60(b) relief "does not bring up the underlying judgment for review," the effect of the Pollution, Contamination exclusion on Golden Corral's claim is squarely at issue because "a meritorious claim" is one of the threshold preconditions for Rule 60(b) relief. *Aikens*, 652 F.3d at 501 (quotation omitted); *see also BLOM Bank*, 605 U.S. at 216 (upholding denial of Rule 60(b)(6) relief were "plaintiffs were unlikely to succeed"). That requirement ensures that granting "relief will not in the end have been a futile gesture." *Boyd v. Bulala*, 905 F.2d 764, 769 (4th Cir. 1990).

Here, reopening the judgment would be decidedly futile because Golden Corral's claims of coverage are barred by the Pollution, Contamination exclusion—an outcome that is not only entirely consistent with the North Carolina Supreme Court's *North State Deli* decision, but was also expressly confirmed by *Cato*, the companion case issued on the same day by the same court. Each of Golden Corral's efforts in its district court briefing to evade the ruling in *Cato* and the application of that exclusion is without merit.

### A. The Policy's Pollution, Contamination Exclusion Bars Coverage

While Golden Corral emphasizes that the insuring agreement in its policy and the *North State Deli* policies are "materially identical" (OB1 (quoting JA556)), Golden Corral fails to acknowledge that the Policy differs in important ways, including, most notably, that unlike the *North State Deli* policies, Golden Corral's

Policy contains a "Pollution, Contamination" exclusion that expressly defines "contaminants and pollutants" to include "virus." *See supra* at 5-6; *compare North State Deli*, 908 S.E.2d at 812 (emphasizing that the policies before it "contain[ed] no exclusions for viruses"); *id.* at 805 (predicating finding of coverage on absence of virus exclusion).

This case is thus far more analogous to the North Carolina Supreme Court's decision in *Cato*, where the policy excluded losses attributable to "contamination," defined to mean "any condition of property due to the actual presence of any ... virus." 909 S.E.2d at 147. Cato, like Golden Corral, asserted virus-related losses due to the virus's effect on its property and due to government orders issued in response to the virus that affected its business operations. *Id.* at 149-50. The court recognized that "[v]iral contamination is essentially what Cato alleges." *Id.* at 149. Because "a reasonable person in the position of the insured would understand the viral contamination exclusion in Cato's policy to exclude Cato's alleged losses," the claim of coverage was foreclosed. *Id.* at 151 (quotation omitted).

The same conclusion applies here. Though the exclusion at issue in *Cato* is not textually identical to the exclusion in Golden Corral's policy, the differences are immaterial: numerous courts have recognized that exclusions indistinguishable from the exclusion here unambiguously foreclose coverage for COVID-19 related losses. *See Starr Surplus Lines Ins. Co. v. Eighth Jud. Dist. Ct.*, 535 P.3d 254, 269

(Nev. 2023); *Baylor Coll. of Med. v. XL Ins. Am., Inc*., 2024 WL 438019, at \*1 (Tex. App. Feb. 6, 2024); *TP Racing LLLP v. Am. Home Assurance Co*., 2023 WL 3750395, at \*2 (9th Cir. June 1, 2023); *Circus Circus LV, LP v. AIG Specialty Ins. Co*., 525 F. Supp. 3d 1269, 1278 (D. Nev. 2021), *aff'd*, 2022 WL 1125663 (9th Cir. Apr. 15, 2022); *Zwillo V, Corp. v. Lexington Ins. Co*., 504 F. Supp. 3d 1034, 1041-43 (W.D. Mo. 2020); *Ford of Slidell, LLC v. Starr Surplus Lines Ins. Co*., 2021 WL 5415846, at \*10-11 (E.D. La. Nov. 19, 2021); *AC Ocean Walk, LLC v. Am. Guarantee & Liab. Ins. Co*., 2022 WL 2254864, at \*14-16 (N.J. Super. Ct. App. Div. June 23, 2022); *Northwell Health, Inc. v. Lexington Ins. Co*., 550 F. Supp. 3d 108, 121 (S.D.N.Y. 2021); *W. Union Co. v. Ace Am. Ins. Co*., 623 F. Supp. 3d 1153, 1160 (D. Colo. 2022).

The decision in *TP Racing* exemplifies these precedents.[6]  The Ninth Circuit there analyzed a policy that, like the Policy here, excluded losses caused by "actual, alleged or threatened release, discharge, escape or dispersal of pollutants or contaminants," with an enumerated list of qualifying "pollutants and contaminants" that included "virus."  2023 WL 3750395, at \*1 (emphasis omitted).

---

[6] *TP Racing* was decided under Arizona law, but there are no relevant differences between Arizona and North Carolina law for purposes of this analysis. *See Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 13 P.3d 785, 791 (Ariz. Ct. App. 2000) (construing a pollution exclusion that does not enumerate "virus" as an excluded contaminant to be limited to traditional environmental pollution).

The court explained that given the exclusion's "breadth" and its capacious causation language, the "very thing" that the policyholder claimed "gives rise to coverage"—loss stemming from the COVID-19 virus—"necessarily triggers the Contaminant Exclusion." *Id.* at *2. The court rejected the policyholder's effort to impose an artificially narrow reading of the word "dispersal," explaining that the "spreading of Covid particles, including by expulsion from infected persons, fits squarely within the ordinary plain meaning of 'dispersal' of a 'virus.'" *Id.* Because the policyholder's losses all allegedly arose from the "actual or threatened dispersal of virus particles," the exclusion foreclosed the policyholder's coverage claim. *Id.* at *3. Golden Corral's coverage claim is barred for the same reasons.

## B. Golden Corral's Efforts To Circumvent The Exclusion Are Unavailing

In its Rule 60(b) briefing in the district court, Golden Corral contended that the Pollution, Contamination exclusion does not bar its insurance coverage claim (1) because it should be construed as excluding only traditional environmental pollution or (2) because the ensuing loss provision limits its application. Neither argument has merit.

### 1. *The Exclusion Is Not Limited To Traditional Environmental Pollution*

Golden Corral cannot distinguish the authorities cited above; nor can it explain how coverage can survive the exclusion's plain language. In its briefing

before the district court, Golden Corral instead sought to rewrite the exclusion to remove the key word "virus." JA543-549, 655-659. Its sole justification for that reimagining of the Policy's text is that courts applying North Carolina law have construed *different* pollution exclusions that *lack* any reference to "virus" as limited to traditional environmental pollution. *See Auto-Owners Ins. Co. v. Potter*, 105 F. App'x 484, 496 (4th Cir. 2004) (citing *W. Am. Ins. Co. v. Tufco Flooring E., Inc.*, 409 S.E.2d 692 (N.C. Ct. App. 1991)). Those cases have no bearing here.

a. The decisions Golden Corral invoked involve a common exclusion known as the "absolute pollution exclusion" or "APE," which some jurisdictions have construed as limited to traditional environmental pollution, for reasons specific to that exclusion. *See Potter*, 105 F. App'x at 496; *see also, e.g.*, *MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1207-18 (Cal. 2003) (California law); *Tufco*, 409 S.E.2d at 699-700.

Golden Corral's Pollution, Contamination exclusion differs from the APE in three key respects. First, and most importantly, it explicitly enumerates "virus" as a "[c]ontaminant[] or pollutant[]." JA150. That distinction alone is dispositive. *See Starr Surplus Lines*, 535 P.3d at 268 (refusing to "write out explicit terms" from the policy). Second, the exclusion defines "contaminants and pollutants" as, in part, "material that after its release *can cause or threaten damage to human health*." JA150 (emphasis added). That qualifier distinguishes the exclusion from

42

the APE, which (as construed in *Potter* and *Tufco*) focuses on substances that mainly harm the *environment*; by contrast, the exclusion here includes substances that mainly harm *people*. Third, the list of exemplar "pollutants" in the exclusion underscores the same point. Whereas the APE lists "smoke, vapor, soot, fumes, acids, alkalis, chemical and waste" as examples of "pollutants," *Potter*, 105 F. App'x at 493, the exclusion here enumerates "bacteria" and "virus," along with certain types of "hazardous substances," JA150. Each of these distinctions confirms that the Pollution, Contamination exclusion extends beyond strictly environmental pollutants to losses from contaminants—specifically including viruses—that mainly harm people. *See Starr Surplus Lines*, 535 P.3d at 267-69; *Northwell Health*, 550 F. Supp. 3d at 121; *Zwillo*, 504 F. Supp. 3d at 1041; *AC Ocean Walk*, 2022 WL 2254864, at *15; *Ford of Slidell*, 2021 WL 5415846, at *11.[7]

The decision in *Northwell Health* is illustrative. While acknowledging the "environmental implications" of terms like "discharge" and "dispersal" as used in the APE, the court held that the broader exclusion in *Northwell Health* was

---

[7] In light of these textual differences, Golden Corral erred below in citing (JA544-545) Illinois Union's briefing in *London Bridge Resort LLC v. Illinois Union Insurance Co.*, 505 F. Supp. 3d 956 (D. Ariz. 2020), because the policy language there did *not* specifically enumerate "virus" as a "pollutant or contaminant" or otherwise depart from language that has been interpreted as limited to traditional environmental pollution, *id.* at 959-60.

controlled by the "unambiguous" language that explicitly "define[d] contaminants to include viruses." 550 F. Supp. 3d at 121. "Grouping viruses with environmental and industrial pollutants" may have been "unorthodox," the court explained, but the policy could not be properly read "in a way that leaves part of the contract meaningless" by "construing 'contamination' not to include one of the terms in its contractual definition." *Id*. As another court put the same point, the exclusion cannot be properly read as limited to "traditional environmental pollution" because "the addition of 'virus' transforms the clause into one excluding both a health-harming contaminant like a virus and environmental pollutants." *Starr Surplus Lines*, 535 P.3d at 301 (quotation omitted).

That reasoning compels the same conclusion here. Indeed, the analysis applies with even more force in this case because, as noted above, the Pollution, Contamination exclusion does not even contain an "unorthodox" pairing of "virus" with mainly environmental pollutants. Instead, the exclusion here situates "virus" comfortably alongside "bacteria" and certain other "hazardous substances" that "can cause or threaten damage to human health." JA150.

b. It makes no difference that, as Golden Corral pointed out below (JA546), the exclusion references environmental statutes when it provides that contaminants and pollutants include "bacteria, virus, or hazardous substances as listed in the Federal Water Pollution Control Act, Clean Air Act, Resource Conservation and

Recovery Act of 1976, and Toxic Substances Control Act, or as designated by the U.S. Environmental Protection Agency." JA150. Golden Corral's reliance on this language is misplaced for three reasons.

First, the "as listed/designated in" clause applies *only* to the immediately preceding term "hazardous substances," not to the earlier "bacteria, virus" terms. North Carolina courts apply "the doctrine of the last antecedent," under which "relative and qualifying words, phrases, and clauses ordinarily are to be applied to the word or phrase immediately preceding and, unless the context indicates a contrary intent, are not to be construed as extending to or including others more remote." *HCA Crossroads Residential Ctrs., Inc. v. N.C. Dep't of Hum. Res*., 398 S.E.2d 466, 469 (N.C. 1990). Further, North Carolina courts recognize that "the word 'or' is a disjunctive particle indicating that the various members of the sentence are to be taken separately." *Marsh v. Marsh*, 816 S.E.2d 529, 531-32 (N.C. Ct. App. 2018) (quotation and alterations omitted)). Under these interpretive rules, the "as listed/designated in" clause in the Pollution, Contamination exclusion should be read as modifying only the last antecedent and independent term "hazardous substances," not the earlier terms.

Second, the foregoing grammatical rules make especially good sense here, where the list on its face reflects two basic categories: (1) bacteria or viruses, which are easily-recognized, essentially self-defining substances, and (2)

"hazardous substances," a broad category that cannot be meaningfully understood without some limiting definition.  JA150.  The exclusion's reference to specified statutes and EPA designations supplies that definition:  the exclusion does not refer to all "substances" that might be described as "hazardous" in some way, but only to those expressly called out by statute or the EPA.  *See* 33 U.S.C. § 1321(b)(2)(A) (Clean Water Act provision for listing of hazardous substances); 42 U.S.C. § 7412(b)(1) (provision of the Clean Air Act listing "hazardous air pollutants"); 42 U.S.C. § 6903(5) (Resource Conservation and Recovery Act provision defining "hazardous waste"); 15 U.S.C. § 2602(2) (provision of Toxic Substances Control Act defining "chemical substance").

Third, and in any event, the EPA *has* designated "SARS-CoV-2 and variants" as an "Emerging Viral Pathogen."  *See Emerging Viral Pathogen Guidance and Status for Antimicrobial Pesticides*, EPA, https://www.epa.gov/pesticide-registration/emerging-viral-pathogen-guidance-and-status-antimicrobial-pesticides.  Even under Golden Corral's mistaken construction of the Pollution, Contamination clause, then, the COVID-19 virus falls within the exclusion's ambit.

For one or more of these foregoing reasons, numerous courts have held that contamination exclusions with identical "as listed/designated in" clauses bar claims arising from the COVID-19 virus.  *See Starr Surplus Lines*, 535 P.3d at 258;

*Baylor*, 2024 WL 438019, at \*1; *Zwillo*, 504 F. Supp. 3d at 1041-42; *Northwell Health*, 550 F. Supp. 3d at 121; *Ford of Slidell*, 2021 WL 5415846, at \*10-11. The same result is warranted here.

2. <u>The Exclusion's Ensuing Loss Provision Does Not Create<br>Coverage</u>

Golden Corral's final contention in the district court was that the Pollution, Contamination clause does not apply because the ensuing loss provision negates the effect of the exclusion. JA548-549. That provision states that "if a peril insured by this Policy arises directly or indirectly from pollution or contamination any loss, damage or destruction of property insured by this Policy arising directly from that peril shall (subject to the terms, conditions and limitations of the Policy) be covered." JA150. As an initial matter, that argument is procedurally improper: because Golden Corral never raised it in its opposition to Illinois Union's motion for judgment on the pleadings, it is not cognizable in a Rule 60(b)(6) motion. *See United States v. Williams*, 674 F.2d 310, 313 (4th Cir. 1982) (Rule 60(b) is not appropriate vehicle for arguments that "could have been raised before the district court initially entered judgment," but "were not").

In any event, the contention is meritless. As this Court has explained, when an "exclusion is triggered, an ensuing loss clause applies only when there is significant attenuation between the direct result of [the excluded cause of loss] and the ultimate loss for which coverage is sought." *Taja Invs. LLC v. Peerless Ins.*

*Co.*, 717 F. App'x 190, 192 (4th Cir. 2017). Where, by contrast, "the very risk raised by" the excluded cause of loss "came to pass," the exception to the exclusion does not apply, since allowing insureds to simply point to "other elements or natural forces" as "the last causative agents of the damage, though to be sure utterly foreseeable causes of the damages" would "eliminate the exclusion." *TMW Enters., Inc. v. Fed. Ins. Co.*, 619 F.3d 574, 577 (6th Cir. 2010). Here, Golden Corral claims that the very risk posed by the widespread dispersion of a virus in society—*viz.*, the issuance of government orders restricting business operations to reduce community spread—came to pass and is the basis for Golden Corral's claimed losses. The ensuing loss provision therefore has no application. Because the Pollution, Contamination exclusion defeats Golden Corral's coverage claim, reopening the judgment pursuant to Rule 60(b)(6) would be futile.

## CONCLUSION

For the foregoing reasons, the judgment below should be affirmed.

Dated: October 10, 2025

Respectfully submitted,

By: /s/ *Jonathan D. Hacker*

THEODORE B. SMYTH
STEVEN A. BADER
CRANFILL SUMNER LLP
PO Box 27808
Raleigh, N.C. 27611
(919) 828-5100

JONATHAN D. HACKER
JENYA GODINA
O'MELVENY & MYERS LLP
1625 Eye St. N.W.
Washington, D.C. 20006
(202) 383-5300

ROBERT W. FISHER
CLYDE & CO US LLP
271 17th Street NW Suite 1720
Atlanta, GA 30363
(404) 410-3150

*Counsel for Defendant-Appellee Illinois Union Insurance Company*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 11,360 words, excluding the portions of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: October 10, 2025

/s/ *Jonathan D. Hacker*
Jonathan D. Hacker

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 10th day of October, 2025, I electronically filed the foregoing with the Clerk of the Court using the appellate CM/ECF system. All participants are registered CM/ECF users, and will be served by the appellate CM/ECF system.

/s/ *Jonathan D. Hacker*
Jonathan D. Hacker

*Counsel for Defendant-Appellee*
*Illinois Union Insurance Company*