**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 25-1682**

───────────

GOLDEN CORRAL CORP.; GOLDEN CORRAL FRANCHISING SYSTEMS, INC.,

Plaintiffs - Appellants,

v.

ILLINOIS UNION INSURANCE COMPANY,

Defendant - Appellee.

───────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever, III, District Judge.  (5:20-cv-00349-D)

───────────

Argued:  March 17, 2026                                      Decided:  July 15, 2026

───────────

Before RUSHING, HEYTENS, and BERNER, Circuit Judges.

───────────

Affirmed by published opinion. Judge Berner wrote the opinion, in which Judges Rushing and Heytens joined.

───────────

**ARGUED:**  William Robinson Hartzell, MCDOUGAL HARTZELL, PLLC, Raleigh, North Carolina, for Appellants.  Jonathan D. Hacker, O'MELVENY & MYERS LLP, Washington, D.C., for Appellee.  **ON BRIEF:**  Gregg E. McDougal, MCDOUGAL HARTZELL, PLLC, Raleigh, North Carolina, for Appellants.  Theodore B. Smyth, Steven A. Bader, CRANFILL SUMNER LLP, Raleigh, North Carolina; Robert W. Fisher, CLYDE & CO US LLP, Atlanta, Georgia; Jenya Godina, O'MELVENY & MYERS LLP, Washington, D.C., for Appellee.

───────────

BERNER, Circuit Judge:

Federal Rule of Civil Procedure 60(b)(6) is often described as a "catch-all provision" that authorizes courts to relieve a party from a final judgment, order, or proceeding when the party demonstrates extraordinary circumstances. Unless the circumstances are truly extraordinary, however, they cannot outweigh the fundamental principle of finality of judgments. Our common law system rests upon this principle to allow parties to carry on after the adjudication of a legal dispute. Finality of judgments also permits our case law to develop without unwarranted disruption. Thus, though Rule 60(b)(6) permits courts to make exceptions to finality, this unusual relief may be granted only when "appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 614–15 (1949).

Golden Corral, a buffet restaurant chain, argues that the district court abused its discretion in denying Golden Corral's Rule 60(b)(6) motion for relief from a prior decision of the district court issued more than three years prior. In September 2021, the district court ruled that Golden Corral's property insurance policy did not provide coverage for losses incurred as a result of governmental COVID-19 restaurant closure mandates. In December 2024, the North Carolina Supreme Court reached a divergent result in a different case, though one presenting similar facts. Golden Corral argues that this subsequent state court ruling is so at odds with the district court's prior ruling in this case that it was an abuse of discretion for the district court to deny Rule 60(b)(6) relief. We disagree and affirm the ruling of the district court.

2

I.

Golden Corral Corporation and Golden Corral Franchising Systems Incorporated (collectively, Golden Corral) own and franchise buffet restaurants throughout the United States. Illinois Union Insurance Company (Illinois Union) issued Golden Corral a commercial property insurance policy (the Policy). Subject to certain exclusions, the Policy covers Golden Corral's real and personal property "against all risks of direct physical loss, damage or destruction." Parties' Joint Appendix (J.A.) 131, 132. The covered losses include those "resulting from the necessary interruption or reduction of business . . . caused by physical loss, damage or destruction, by a peril insured by this Policy, of property insured." J.A. 141.

Following the outbreak of the COVID-19 pandemic, state and local governments throughout the country instituted mandates designed to quell the spread of the virus. The Governor of North Carolina ordered the immediate closure of all indoor dining facilities in the state. *See* N.C. Exec. Order No. 118 (Mar. 17, 2020). The Governor issued another order prohibiting non-essential travel and requiring individuals to stay close to home. *See* N.C. Exec. No. 121 (Mar. 27, 2020). Golden Corral alleges that, in response to these orders and others, it suspended its restaurant operations, which led to significant lost revenue from its corporate-owned restaurants in addition to reduced royalty and lease income from its franchisees. Golden Corral submitted a claim to Illinois Union for coverage of these losses.

3

II.

Before receiving a response to its coverage claim, Golden Corral filed suit against Illinois Union in North Carolina state court seeking a declaration that its pandemic-related losses were covered under the Policy. Illinois Union removed the action to federal court on the basis of diversity jurisdiction and notified Golden Corral that its claim was denied.[1] Following this denial, Golden Corral amended its complaint to add two North Carolina state law causes of action: 1) breach of contract; and 2) the implied covenant of good faith and fair dealing.

Illinois Union answered the amended complaint and moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Illinois Union argued that, while the COVID-19 virus could cause harm to people, it could not cause physical, tangible loss or damage to property, as required for coverage under the Policy. The district court granted Illinois Union's motion and ordered Golden Corral's case dismissed with prejudice. *Golden Corral Corp. v. Ill. Union Ins. Co.*, 559 F. Supp. 3d 476, 492 (E.D.N.C. 2021). The district court applied North Carolina law governing insurance contract disputes and concluded that Golden Corral had failed to plausibly allege a loss covered under the Policy. *Id.* at 484–90. This court affirmed in an unpublished per curiam opinion. *Golden*

---

[1] Golden Corral Corporation is a North Carolina corporation. Golden Corral Franchising Systems Incorporated is a Delaware corporation. Both have their principal places of business in Raleigh, North Carolina. Illinois Union is incorporated in Illinois, as its name suggests.

*Corral Corp. v. Ill. Union Ins. Co.*, No. 21-2119, 2022 WL 3278938 (4th Cir. Aug. 11, 2022).

Over three years after its case was dismissed with prejudice, Golden Corral filed a motion for relief from final judgment pursuant to Federal Rule of Civil Procedure 60(b)(6). Golden Corral argued that the North Carolina Supreme Court's ruling in *North State Deli v. Cincinnati Ins. Co.*, 908 S.E.2d 802 (N.C. 2024), so diverged from the district court's prior ruling that an exception to the general rule of finality was warranted. *North State Deli* also involved a claim for coverage of losses incurred by dining establishments that suspended operations in response to COVID-19 related government orders. *Id.* at 805-08. The Supreme Court of North Carolina held that the losses were covered under the dining establishments' commercial liability insurance policy. *Id.* at 810–13.

Golden Corral asked the district court to reopen and revise its prior judgment to apply the holding in *North State Deli.* The district court declined to grant Rule 60(b)(6) relief. *Golden Corral Corp. v. Ill. Union Ins. Co.*, 787 F. Supp. 3d 149, 150 (E.D.N.C. 2025). Golden Corral appeals from the district court's denial of its motion, and we affirm.

III.

Golden Corral argues on appeal, as it did before the district court, that the ruling of the North Carolina Supreme Court in *North State Deli* is so "closely related" to this case that it was an abuse of discretion for the district court to deny its Rule 60(b)(6) motion.

Federal Rule of Civil Procedure 60(b) enumerates circumstances under which a court may reopen a final judgment. The Rule's last subsection, Rule 60(b)(6), permits a

5

court to reopen or revise a final judgment for any "reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The decision to grant or deny 60(b)(6) relief rests within the sound discretion of the district court. Accordingly, we review a district court order denying such relief solely for abuse of discretion. *FTC v. Ross*, 74 F.4th 186, 190 (4th Cir. 2023). "A district court abuses its discretion when it acts in an arbitrary manner, when it fails to consider judicially-recognized factors limiting its discretion, or when it relies on erroneous factual or legal premises." *Wall v. Rasnick*, 42 F.4th 214, 220 (4th Cir. 2022) (quoting *United States v. Nicholson*, 676 F.3d 376, 383 (4th Cir. 2012)).

To succeed on a Rule 60(b)(6) motion, a movant must demonstrate that "(1) the motion is timely, (2) that he has a meritorious claim or defense, and (3) that the opposing party will not suffer unfair prejudice if the judgment is set aside." *Allen v. Stein*, 165 F.4th 272, 288–89 (4th Cir. 2026) (quoting *United States v. Welsh*, 879 F.3d 530, 533 (4th Cir. 2018)). In addition to these threshold requirements, relief under Rule 60(b)(6) also requires a showing of "extraordinary circumstances." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 210 (2025). Our analysis begins and ends with this final requirement, that "extraordinary circumstances" be shown.

Golden Corral can prevail on appeal only if the ruling by the North Carolina Supreme Court in *North State Deli* created a circumstance so extraordinary that it was an abuse of discretion for the district court to deny its Rule 60(b)(6) motion. Golden Corral cannot meet this heavy burden.

Federal courts sitting in diversity jurisdiction must apply the substantive law of the forum state in cases such as this that arise out of state law. *Erie Railroad Co. v. Tompkins*,

6

304 U.S. 64, 78 (1938); s*ee also Kritter v. Mooring*, 142 F.4th 267, 273 (4th Cir. 2025). Where no applicable state law exists, the federal court must predict, to the best of its ability, how the state's highest court would rule. *See Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002). Here, the district court did exactly that. It properly looked to then-existing North Carolina precedent and made its best effort to predict how the North Carolina Supreme Court would rule. *Golden Corral*, 559 F. Supp. 3d at 483–92.

Had the North Carolina Supreme Court handed down its ruling in *North State Deli* before the district court ruled on Illinois Union's motion for judgment on the pleadings, the district court may well have reached a different conclusion. Unfortunately for Golden Corral, the timing was not in its favor.

It is well established in our circuit that a mere change in decisional law—without more—does not provide a basis for Rule 60(b)(6) relief. *Moses v. Joyner*, 815 F.3d 163, 168–69 (4th Cir. 2016) (quoting *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993)); *see also Ross*, 74 F.4th at 194. "*Erie* simply does not stand for the proposition that a plaintiff is entitled to reopen a federal court case that has been closed for several years in order to gain the benefit of a newly-announced decision of a state court." *DeWeerth v. Baldinger*, 38 F.3d 1266, 1272 (2d Cir. 1994); *see also Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 131 F.3d 625, 628 (7th Cir. 1997) ("[T]he fact that our prediction—and the prediction of the district court—was contrary to the conclusion later reached by [a state supreme court] does not constitute an extraordinary circumstance

7

warranting the reopening of this case to achieve a similar result."). The district court's refusal to do so was not an abuse of discretion.

Some courts have recognized a narrow exception to the general rule that a change in state decisional law subsequent to a final judgment cannot provide a basis for Rule 60(b)(6) relief. In *Pierce v. Cook & Co.*, for example, the Tenth Circuit held that Rule 60(b)(6) relief may have been warranted where the plaintiffs received results in a federal action that diverged from results received by different plaintiffs in a parallel state court action. 518 F.2d 720, 723–24 (10th Cir. 1975) (en banc). Though brought by different plaintiffs, both the federal and state court actions arose out of injuries caused by the same car accident. *Id.* Referencing the *Erie* doctrine, the Tenth Circuit explained that in diversity jurisdiction cases "the results in federal court should be substantially the same as those in state court litigation arising out of the same transaction or occurrence." *Id.* at 723 (citing *Erie*, 304 U.S. at 74–75). The Second Circuit adopted a similar principle in the context of federal post-9/11 litigation. *In re Terrorist Attacks on September 11, 2001*, 741 F.3d 353 (2d Cir. 2013). There the court reversed a denial of a Rule 60(b)(6) motion where the plaintiffs had sued "based on a single underlying tort governed by the same statute," concluding that "inconsistent results for victims of the same incident poses a unique problem of unfairness." *Id.* at 359. Notably, these cases involved subsequent rulings arising out of the same transaction or occurrence or closely related facts as the earlier rulings.

That is not what happened here. While this case and *North State Deli* both concern claims under commercial property insurance policies for losses resulting from business interruptions during the COVID-19 pandemic, the similarities end there. In contrast to

*Pierce*, where the state court action involved injuries from the same car accident as the one at issue in the federal court action, this case and *North State Deli* involve *different* injuries, *different* insured plaintiffs, a *different* insurance provider, and a *different* insurance policy. Simply put, even if we were to agree that an exception to the general rule of finality may be appropriate in cases arising out of the same transaction or occurrence, that is not the situation here.

Finally, Golden Corral suggests the district court abused its discretion by pointing out that Golden Corral declined to seek a stay in its case while the *North State Deli* case was wending its way through the North Carolina courts. Here too, we disagree. As a threshold matter, the district court did not base its Rule 60(b)(6) ruling on Golden Corral's litigation strategy. The district court simply made clear that Rule 60(b)(6) does not provide an opportunity for a "do over" when a chosen litigation strategy turns out to have been the wrong one. The consequences of calculated litigation choices—even if ultimately misguided—do not warrant Rule 60(b)(6) relief. *See BLOM Bank SAL*, 605 U.S. at 212 (quoting *Ackermann v. United States*, 340 U.S. 193, 198 (1950)) (noting that "free, calculated, deliberate [litigation] choices are not to be relieved from"); *see also Aikens v. Ingram*, 652 F.3d 496, 503 (4th Cir. 2011) (rejecting argument that movant's "posited predicament" resulting from poor litigation strategy choices constitutes extraordinary circumstances); *Dowell*, 993 F.2d at 48 (affirming denial of a Rule 60(b)(6) motion where

9

the movant made a "voluntary, deliberate, free, [and] untrammeled choice . . . not to appeal the decision of the district court" (quoting *Ackermann*, 240 U.S. at 200)).

In denying Golden Corral's Rule 60(b)(6) motion, the district did not act in an arbitrary manner, nor did it fail to consider any judicially-recognized factors or rely on erroneous factual or legal premises. Accordingly, we find no abuse of discretion.

IV.

For the reasons set forth above, we affirm the denial of Golden Corral's motion for Rule 60(b)(6) relief.

*AFFIRMED*